UNITED STATES *v.* AMERICAN BEAD CO. (No. 1962).[1]

1. CONSTRUCTION, PARAGRAPH 347, TARIFF ACT OF 1913—"ARTIFICIAL."

An exact imitation is not necessary to bring an article within the meaning of the word "artificial" as used in paragraph 347, tariff act of 1913. If an article is in size, shape, and color like "fruits, grains, leaves, flowers, and stems or parts thereof," it falls within the provision. The association of the word "artificial" with the words "suitable for use as millinery ornaments" would indicate that an imitation close enough to render an article suitable for such use would bring it within the provision.

2. CONSTRUCTION, PARAGRAPH 347, TARIFF ACT OF 1913—"OF WHATEVER MATERIAL COMPOSED."

Paragraph 347, tariff act of 1913, indicates very clearly a congressional purpose to make it exclusive in the field of its application. "Artificial * * * fruits, grains, leaves, and stems or parts thereof," are of necessity made of materials presumptively covered elsewhere in the act, and it is hardly conceivable that paragraph 347 can have operation at all without invading some other paragraph. The effect of the

---

[1] T. D. 38044 (36 Treas. Dec., 479).

phrase "of whatever material composed" is to make the paragraph invasive of others, and to suspend the force of a particular material as a factor in determining the question of specificity, as, whatever the material, paragraph 347 has provided for certain specific articles composed of it. If the phrase may be likened to "by whatever name known" in relative comprehensiveness, its use amounts to an eo nomine designation of the material.—United States v. Snow's United States Sample Express Co. (8 Ct. Cust. Appls., 351; T. D. 37611).

3. ARTIFICIAL FLOWERS MADE OF BEADS.

Artificial flowers, leaves, and stems, made of beads with the aid of wires and silk threads, having the size, form, color, and outline of natural flowers, are dutiable under paragraph 347, tariff act of 1913, as "artificial and ornamental * * * leaves, flowers, and stems or parts thereof, of whatever material composed," rather than as beaded articles under paragraph 333.

## United States Court of Customs Appeals, June 3, 1919

APPEAL from Board of United States General Appraisers, Abstract 42788.

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

*Allan R. Brown* (*Jacob L. Klingaman,* of counsel) for appellee.

[Oral argument Mar. 26, 1919, by Mr. Hanson and Mr. Klingaman.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case consists of imitation flowers, leaves, and stems. The appraiser, in answer to the protest, described the goods as follows.

The merchandise in question consists of artificial flowers, the stems of which are composed of a metal wire, around which are wound colored silk threads, the petals of the flowers being composed of various colored beads, which are securely strung on wire. The design of the article is such that in size, form, color, and outline they resemble natural flowers.

The goods were assessed for duty under paragraph 347 of the act of 1913, which provides, inter alia, for "artificial or ornamental feathers suitable for use as millinery ornaments, artificial and ornamental fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed."

The board held the merchandise dutiable under paragraph 333, which provides for "curtains, and other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, 50 per centum ad valorem."

In deciding the case the board referred to the merchandise in the following terms:

The exhibits representing the merchandise consist of small beads of various colors strung on wire, forming crude representations of leaves and stems, and an inspection thereof convinces us that they bear very little resemblance to any natural leaves or stems.

An examination of the exhibits fails to convince us that the return of the appraiser is in any way inaccurate. It is obvious from a reading of paragraph 347 that an exact imitation is not essential to bring the articles aimed at within its terms. The fact that artificial flowers and so forth are made dutiable, of whatever materials composed, demonstrates that an imitation need not be so exact as to deceive the eye. This would be impossible when a variety of materials is open to use. The association of the words with "millinery ornaments" would indicate also that an imitation of leaves and flowers which rendered an article suitable for such ornamental use is within the provision. So long as the article is in size, shape, and color like leaves and flowers and designed for ornamental use it falls within the statute. To exact more would result in a contest in every case over the exactitude of the imitation.

The case of Dieckerhoff *v.* United States (4 Ct. Cust. Appls., 384; T. D. 33796), cited by importers' counsel, presented a very different question. In that case artificial fruit was in issue. The article was composed of beeswax, was diminutive in size, and was distinctly an article of utility, the first use of which impaired its form. It was more nearly analogous to a molded ice, modeled in the form of fruit to be served and eaten, than an ornament for hats or bonnets. We quote briefly from the opinion in that case, describing the articles:

They are sold by the importers to notion, department, and small dry-goods stores, by whom in turn they are retailed as sewing articles. They are not used as ornamental or decorative objects, nor in millinery, but are simply attractive forms into which sewing wax is cast for convenient sale and use. This use necessarily destroys the shape of the article and finally consumes the material itself.

After further discussion it was said:

In the present case the general disparity of size between the wax forms and natural fruits, and the consequent lack of substantial resemblance between the two, lead the court to believe that the protested articles are not "artificial fruits" within the meaning of paragraph 438.

So, in Morimura *v.* United States (8 Ct. Cust. Appls., 111; T. D. 37223), apples and pears of the size of the natural fruit were held to fall within the paragraph. In that case the imitation was more accurate than in this, but the distinction is one of degree in resemblance to the natural object only.

We are, on the whole case, unable to agree that the classification of the collector and the report of the appraiser have been overcome by a mere inspection of the article. On the contrary, we think the resemblance to natural flowers is sufficiently striking to require the classification adopted by the collector if the provision for beaded articles be not the more specific.

The case turned below upon this latter question, the board ruling that under the decisions in Loewenthal *v.* United States (6 Ct. Cust.

Appls., 209; T. D. 35464) and American Bead Co. *v.* United States (7 Ct. Cust. Appls., 18; T. D. 36258) the bead paragraph was controlling. It is necessary, therefore, to see just what was decided in these cases.

In Loewenthal *v.* United States the beaded articles consisted of tunics composed of lace nets, beaded, and motifs, garnitures, and gimps of beads with net foundation, the beads forming designs of various forms, the entirety being ready to be applied to garments. The contest was between paragraph 358 for "laces, * * * wearing apparel, * * * and all articles or fabrics, * * *. appliquéd, * * * and articles made in whole or in part of any of the foregoing fabrics or articles; *all of the foregoing of whatever yarns, threads, or filaments composed,*" and paragraph 333 for "beads and spangles of all kinds." Two questions were decided: First, whether the articles in question were appliquéd, as that term is used. This question was examined and on the authority of United States *v.* Hamburger Levine Co. (5 Ct. Cust. Appls., 217; T. D. 34382) it was held that the articles were not appliquéd within the terms of either of the two paragraphs in question.

The court then proceeded to consider the question of the relative specificity of the two named paragraphs, and after full discussion said:

Accepting the obvious purpose of Congress to rate beads and beaded articles at 35 per cent whenever in chief value of such, as expressed by its collocation, within paragraph 333, the beaded articles provisions of the amended act (1909), and confining paragraph 358 to goods in chief value of laces, nets, embroideries, trimmings, and similar high-class manufactures, adopts a differentiation clearly within the purpose of Congress and founded upon a clearly defined commercial distinction.

We are therefore driven to the interpretation adopted, that the articles and fabrics within paragraph 358 *must be in chief value of threads, yarns, or filaments, of which these goods are not, but, that being in chief value of beads, they fall for dutiable purposes within paragraph 353.*

In American Bead Co. *v.* United States, the question presented was as to whether beads of various material other than metal, some of wood, others gelatin or paste, china or colored glass were dutiable as jewelry, and it was said:

They do not, save one sample in an insignificant degree, imitate any of the precious or semiprecious stones. Including and comprising the great bulk are necklaces in imitation of jet. They are all intended to be worn on or about the person. * * *

The contest there arose between paragraph 333 for articles of beads and paragraph 356, known as the jewelry paragraph.

The question was again fully discussed, and it was held, citing the case of United States *v.* Hawaii & South Seas Curio Co. (T. D. 26778), that beads of the character involved in that case were not jewelry and did not fall within paragraph 356. It was said (p. 29):

Necklaces made of the precious metals or imitations thereof have been held by this court as jewelry, commonly so known. * * *

Likewise, necklaces in imitation of the precious stones.

But it was further said that "jet is not a precious or semiprecious stone, but a variety of mineral coal," and that, accordingly, it has been held that jet articles are not commonly known as jewelry.

Referring to certain beaded articles made of amber beads it was said:

Inasmuch, however, as Congress in paragraph 357 has not classed amber as a precious or semiprecious stone or material for use in the manufacture of jewelry, and in paragraph 356 has expressly avoided its enumeration among the imitations of settings rated at 60 per cent, the purpose seems obvious not to have so rated for duty imitations of amber.

Reliance is also placed by the importer upon an expression used in the case of United States *v.* Gavin & Co. (7 Ct. Cust. Appls., 292; T. D. 36804), referring to Loewenthal *v.* United States, saying of this case:

This court, after reviewing all the paragraphs of the present tariff act in pari materia with an apposite paragraph 33, reached the conclusion that it was the purpose to make that paragraph exclusive, in so far as the express limitations therein permitted for beaded articles.

The real question which stood for decision was this, whether paragraph 333, providing for articles not embroidered nor appliquéd, composed wholly or in chief value of beads or spangles, etc., should be construed as providing for articles in which one or the other—that is, beads or spangles—should of itself exceed all other material in the article. This construction was negatived, it being held that the phrase "beads or spangles" was used in the paragraph as a collective subject of legislation, embracing all articles composed of either or both of these elements. The language quoted was a statement of what was decided in the Loewenthal case, which we have discussed above, and could not have been designed to extend the doctrine of that case.

The statement quoted can not therefore be understood as excluding other paragraphs of the section from the same consideration as is accorded to paragraph 333, for so construed it would conflict with the statement contained in American Bead Co. *v.* United States, supra, that "beads of all kinds" as used in paragraph 333, did not include any of that class of beads constituting jewelry, commonly or commercially so known. It would also conflict with the two cases of United States *v.* Bartiromo (9 Ct. Cust. Appls., 183; T. D. 38003) and United States *v.* Battiloro et al. (9 Ct. Cust Appls., 180; T. D. 38002). In each of these cases coral beads, unstrung, were held dutiable under paragraph 357 as "coral * * * cut but not set, and suitable for use in the manufacture of jewelry," and not under paragraph 333.

In the present case we have a paragraph in 347 that indicates very clearly a congressional intent to make it exclusive in the field of its

application.   An artificial flower is of necessity made up of some material which presumptively is covered with greater or less specificity in some paragraph of the tariff act.   If of silk or cotton or linen or jute it would be found provided for.   In short, it is hardly conceivable that the paragraph can have operation at all without invading some other paragraph.   In such case a congressional intent to invade other paragraphs is inferred, and when such intent is manifest it becomes the duty of the court to attempt a comparison of the two paragraphs in order to ascertain which is the more specific. Neither is immune from such test.   The one is no more sacred than the other.

This doctrine is not new.   In Carter v. United States (6 Ct. Cust. Appls., 253; T. D. 35475) it is applied to the provision for Jacquard figured upholstery goods in the piece when in contest with nets and nettings.   It was held that the former was the more specific, and that it was intended to invade other paragraphs.   The chief ground for that decision was that the Congress had shown an intention to classify these goods by use.

In the present case, artificial flowers are grouped with feathers suitable for millinery ornaments and are ornamental, thus being capable of like use.   It is not, however, a necessary inference from this that the Congress has shown an intent to classify these according to use, but the purpose of making this classification all-comprising is equally manifest.   The language is as strong as could well be conceived.   "Artificial and ornamental flowers, of whatever material composed," could not well be more inclusive.

In Smith v. United States (5 Ct. Cust. Appls., 40; T. D. 34008) it was said:

It is possible to use broad language to reach the most exact specificity.   Comprehensiveness may so completely hedge about a term as to make clear the legislative intention to include a particular article, and this beyond all peradventure.

So, in Knauth v. United States (1 Ct. Cust. Appls., 334; T. D. 31432), in construing the term "all smokers' articles whatsoever:"

The intensified form of the expression used, together with the far-reaching effect of the qualifying words stated, manifests to our minds a purpose on the part of the legislature to reach out into all branches of trade and commerce and to gather within the dutiable provisions of this paragraph everything used chiefly by smokers, in that pursuit, and for that purpose, wherever else they may occur or within whatever other provisions of the tariff law the merchandise may be included.

What could make a designation of artificial and ornamental flowers more specific and more invasive of a competing provision than the words "of whatever material composed."   The effect of this phrase is to suspend the force of a particular material as a factor in determining the question of specificity, as whatever the material, paragraph 347 has provided for certain specific articles composed of it.

If the phrase "of whatever material composed" may be likened to "by whatever name known" in relative comprehensiveness, it having been held that the latter amounted in effect to an eo nomine designation of articles of certain characteristics (see United States *v.* Snow's United States Sample Express Co., 8 Ct. Cust. Appls., 351; T. D. 37611), it would follow that paragraph 347 would amount to an eo nomine designation of whatever material would be found in the completed artificial flower, and would attach the name of the material to the eo nomine designation of artificial flowers, giving the term the effect it would possess if reading "artificial flowers composed of glass beads." When this is contrasted with *articles* made up of glass beads it would, as it seems to us, be clear that the eo nomine provision for artificial flowers would control over *articles.*

This view is well established by our decisions. Brody *v.* United States (2 Ct. Cust. Appls., 15; T. D. 31573) is very instructive. In that case there was a provision for *articles* of *willow* which was contrasted with a provision for *baskets* of *wood,* "willow"—defining the material—being a narrower term than "wood," and "baskets," being the eo nomine designation, hence more narrow than "articles." The goods, though of *willow,* a kind of *wood,* were·held dutiable as *baskets of wood.*

See also Thomsen *v.* United States (2 Ct. Cust. Appls., 37; T. D. 31590). In that case "baskets of wood" was contrasted with "manufactures of chip." · The court said:

The term "baskets," being the *name* of the articles, seems clearly to be a more exact and specific designation of them than the term "*manufactures.*" This latter term in this application is one of general description only. *The fact that the component material is more specifically described in the second paragraph does not conflict with this conclusion, for nevertheless the term baskets is the exact and specific name of the article itself.* (Italics ours.)

So, in the recent case of United States *v.* Salfner (7 Ct. Cust. Appls., 371, 375; T. D. 36910), the contest was between "woven fabrics, in the piece or otherwise, of which silk is the component material of chief value," and "women's and children's dress goods * · * * composed wholly or in part of wool."

It was conceded that the goods in question were in fact women's and children's dress goods composed in part of wool. It was also conceded that they were woven fabrics composed in chief value of silk. The applicable paragraph as to each was restricted by the n. s. p. f. provision. It was said by Martin, Judge:

In comparing the two competing provisions in question we find that one is limited primarily to "dress goods," the other to "woven fabrics." It must be conceded that "dress goods" is a more narrow term than "woven fabrics," and is indeed a species thereof. On the other hand, the term "woven fabrics" in the present case is modified by the clause "composed in chief value of silk," which is more narrow and specific than the contrasting modifying clause "composed in part of wool." Hartranft *v.*

Meyer (135 U. S., 237). In such a case we think that the primary or eo nomine limitations embodied in the contrasting enumerations should control, and accordingly we hold that "dress goods composed in part of wool" is a narrower and more specific description of the present merchandise than "woven fabrics, in the piece or otherwise, of which silk is the component material of chief value"—

citing among others the cases herein cited to this point.

For a case giving the force above accorded to paragraph 347 see T. D. 28710, opinion by General Appraiser Sharretts, in which paragraph 425 of the act of 1897, being the ancestor of paragraph 347, is held more specific than a provision for "articles * * * in part of * * * spangles made of * * * metal," under paragraph 408 of the same act, which provided for—

Articles composed wholly or in part of beads or spangles made of glass or paste, gelatin, metal, or other material, but not composed in part of wool.

The decision of the Board of General Appraisers is *reversed*.

### DISSENTING OPINION.

DE VRIES, Judge: I dissent. The paramount rule of statutory construction is and ever has been that the intention of the legislature when ascertained, the statute being valid, must prevail. All others are subordinate and must yield to this superior rule of construction.

Justice Story, Chief Justice Marshall, and a unanimous court concurring, thus tersely stated the rule in Wilkinson v. Leland (2 Pet., 27 U. S., 627–662):

This is a legislative act, and is to be interpreted according to the intention of the legislature, apparent upon its face. *Every technical rule, as to the construction or force of particular terms, must yield* to the clear expression of the paramount will of the legislature.

The principle was again succinctly expressed by the Supreme Court in Oates v. National Bank (100 U. S., 239–244) in these words:

The duty of the court, being satisfied of the intention of the legislature, clearly expressed in a constitutional enactment, is to give effect to that intention, and not to defeat it by adhering too rigidly to the mere letter of the statute, or to technical rules of construction. Wilkinson v. Leland (2 Pet., 627); Sedgwick, Constitutional and Statutory Construction (196).

In the later case of Hawaii v. Mankichi (190 U. S., 197–212) the same court repeated and thus amplified this settled maxim of the law:

But there is another question underlying this and all other rules for the interpretation of statutes, and that is, What was the intention of the legislative body? Without going back to the famous case of the drawing of blood in the streets of Bologna, the books are full of authorities to the effect that the intention of the lawmaking power will prevail, even against the letter of the statute, or, as tersely expressed by Mr. Justice Swayne in Smythe v. Fiske (23 Wall. 374, 380): "A thing may be within the letter of a statute and not within its meaning, and within its meaning though not within its letter. The intention of the lawmaker is the law."

The legislative intent may be collected from the letter of the statute, or statutes in pari materia, from certain legislative records, or in many other familiar ways; but however and whenever ascertained, it prevails, whether within or over or contrary to the letter of the statute and all other rules of construction. (See numerous citations—11 Encyclopedia of United States Supreme Court Reports, p. 113, sub. 2, et seq.) What is the sound logic supporting this irrefrangible and unyielding rule? Obviously, whenever a court ceases to follow this rule, at that point that court ceases to adjudicate and commences to legislate.

The rule equally applies to and is one of the rules of construction of import revenue acts. Hartranft *v.* Oliver (125 U. S., 525). It however is distinct from and a competitive canon of construction with that of "eo nomine designation," familiar in the construction of import customs legislation. However dominating the latter precept may be in such jurisprudence, it yields to the former when the two are found in conflict. This court in numerous cases has recognized the separate existence of the two rules as well as the controlling influence of that of an ascertained legislative intent.

Thus, in Burr & Hardwick *v.* United States (9 Ct. Cust. Appls., 71; T. D. 37943), we said:

We still recognize that rule, but we also have regard for the well-settled rule, especially applicable to tariff statutes, that an eo nomine designation of an article, *nothing to appear to indicate a contrary legislative intent,* should govern.

In United States *v.* Mills & Gibb (8 Ct. Cust. Appls., 422; T. D. 37667) this court, in holding that the provisions of the first part of paragraph 258 prevailed over the eo nomine designation of "nets" and "nettings" in paragraph 358, present act, thus applied the rule:

However this may be, an incongruity of rates in some instances does not to our mind justify a conclusion which defeats what we think is the *clear intention of Congress to segregate under paragraph 258* such as these upholstery goods figured by the Jacquard attachment and composed wholly or in chief value of cotton.

So, in United States *v.* Snow's United States Sample Express Co. (8 Ct. Cust. Appls., 351; T. D. 37611), wherein the competition was between the narrow designation, "articles * * * scalloped, * * * by whatever name known," paragraph 358, and the first part of paragraph 258, this court, conceding that the former designation was at most equivalent to an eo nomine designation, expressly predicated its conclusion upon the precedence of the rule of legislative intent. We therein said:

Regardless of *relative specificity* of the terms employed the *intention of Congress in the enactment of paragraph 258 to make that provision inclusive of all goods falling therewithin and to thereby exclude therefrom all other provisions of the act has previously been adjudicated by this court.*

*        *        *        *        *        *        *

The rule, therefore, seems stare decisis in this court that as to all goods answering to the specific description of this portion of paragraph 258, that language was intended to be inclusive and to exclude applicability of all other terms of the act. That conclusion determines this case.

The foregoing several recent pronouncements of this precept were but reaffirmances of earlier applications by the court of this canon of construction. As related to the said provisions of paragraph 258 the rule was probably first applied in Carter & Son v. United States (6 Ct. Cust. Appls., 253; T. D. 35475), wherein this court, through its presiding judge, said:

Obviously these provisions must have been intended (by Congress) to invade the other paragraphs of the tariff act and to remove or leave out of such paragraphs the goods answering (in such other paragraphs) to this *particular and specific* description.

The subsequent case of Downing & Co. v. United States (6 Ct. Cust. Appls., 447; T. D. 35984) was in fact a reargument of the issues in Carter & Son's case, supra. Therein importers' counsel strenuously insisted that the concededly eo nomine words of paragraph 358 should obtain over the obviously descriptive terms of the first part of paragraph 258. This court in reaffirmance of the Carter & Son's case, and in answer to said contention of importers' counsel, said:

In that case it was pointed out by this court that "the intent appears to be manifest to make the *use* to which a narrowly prescribed class of goods is devoted the test of its classification." The court further observed "these provisions must have been intended to invade the other paragraphs of the tariff act and to remove or leave out of such paragraphs the goods answering to this particular and specific description."

*The rule is not one resting in relative specificity so much as in the obvious intent of Congress to select goods of a specified class, here designated by and according to their use, and rate them at a uniform rate of duty.* The application of the rule is more in harmony with than at variance from the rules of specific description and does no violence to any well-recognized principle of tariff interpretation.

See, also, Levi, Sondheimer & Co. v. United States (7 Ct. Cust. Appls., 447; T. D. 37012).

The same rule was applied in the "smokers' articles," the "agricultural implements," the "imitation jet ornaments," and other cases decided by this court, which it would unnecessarily and unduly prolong this writing to review.

The whole course of decision not only emphasizes the distinction between the two rules, but may be epitomized by the statement that this court has uniformly held that a legislative intent to segregate a class or group of goods and rate them specially for duty, when found will be held paramount over all other provisions of the act be they eo nomine or descriptive. The competitive force of such provisions in the act may probably best be expressed in the words of the presiding judge in Carter & Son's case, supra:

Obviously these provisions must have been intended to invade the other paragraphs of the tariff act and to remove or leave out of such paragraphs the goods answering to this particular and specific description.

There is presented in this case the relative predominance of a part of the so-called "beaded article" paragraph (333) of the act of 1913 reading:

333. * * * Other articles not embroidered nor appliquéd and not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, * * *.

A provision of paragraph 347, reading:

347. * * * Artificial or ornamental feathers suitable for use as millinery ornaments, artificial and ornamental fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this section, * * *.

The provision of said paragraph 333 was before this court early in the life of that act in Loewenthal & Co. *v.* United States (6 Ct. Cust. Appls., 209; T. D. 35464). The competing provisions in that case were that part of paragraph 333 quoted and the eo nomine provisions of paragraph 358 for "ornaments" and "trimmings." Two points were presented and decided, *either of which* was decisive of the case. The one that the goods were excluded from paragraph 358 ex vi termini and the other that the legislative history of paragraph 333 and the provisions in pari materia of the act of 1913 conclusively showed an intent of Congress to make said paragraph inclusive and to group together therewithin all beaded articles and articles in chief value of beads not expressly therein excluded therefrom, and to classify all such articles therein for duties thereunder. The manner in which this was by Congress accomplished, and specific instances thereof, was pointed out as evidentiary of the concluded congressional purpose. The point was one of two presented and decided by the court and made equally with the other conclusive of the case. We said:

Additional significance is added in that in this readjustment and recodification of these paragraphs Congress dropped the provisions of paragraphs 349 and 402 of the act of 1909, including therewithin goods in part of other materials, such as rubber and metal, and particularly the provisions for "silk goods ornamented with beads or spangles," provided in said paragraph 402. The fact that paragraph 358, act of 1913, is the substitute for paragraphs 349 and 402 of the act of 1909, and drops therefrom the provision for "goods ornamented with beads or spangles" in said paragraph 402, thereby failing, not to say refusing, to carry it into the revised paragraph (358) and expressly confining the provisions relating to that subject matter to paragraph 333, *does not leave the congressional purpose clothed with much doubt.* Bearing in mind, therefore, the amended act, and reading together all the amending provisions, *we think the congressional purpose clear to provide by paragraph 333 for all articles in chief value of beads*, and by paragraph 358 for the therein enumerated articles in chief value of threads, yarns, and filaments.

The provision was again before the court in American Bead Co. *v.* United States (7 Ct. Cust. Appls., 18; T. D. 36259). The articles therein the subject of decision were beaded chains or necklaces, and the competing provision of the "jewelry" paragraph (356.) The

court again reviewed the decisions and other paragraphs in pari
materia of the tariff acts and said:

> From the foregoing it is made clear that as to imitation jet articles this court has
> already declared, and as to other beaded articles, nonmetallic and not in imitation
> of precious stones, assumed, that they had been allotted by Congress a different
> tariff status from jewelry commonly or commercially so known.
>
> \*        \*        \*        \*        \*        \*        \*
>
> Equally persuasive is the present legislative concept. We have heretofore set
> out in full the congressional code in force affecting beads and beaded articles and
> jewels and jewelry, paragraphs 333, 356, and 357. While the language of the "jew-
> elry" paragraph, 356 of the act of 1913, is conspicuously narrowed in material par-
> ticulars from the scope of its predecessor paragraph, 448 of the act of 1909, the pro-
> visions of the here competing paragraph, 333 of the act of 1913, providing for beads
> and beaded articles is enlarged beyond its predecessor paragraph, 421 of the act of
> 1909. *This patent fact leads us to the same and fortifies the conclusion reached with refer-
> ence to the relative specificity of paragraphs 333 and 356 by this court in comparing para-
> graphs 333 and 358, this act, in Loewenthal & Co. et al. v. United States (6 Ct. Cust.
> Appls., 209; T. D. 35464).* We therein said:
>
>> Bearing in mind, therefore, the amended act, and reading together all the amend-
>> ing provisions, we think the congressional purpose clear to provide by paragraph
>> 333 for all articles in chief value of beads        \*        \*        \*.
>
> The court views that it was intended as *an exhaustive provision as to its subject matter*
> (1) beads and spangles, (2) articles composed wholly and in chief value of beads and
> spangles, only to be invaded by some other clearly and more specifically *expressed
> intention of Congress.*

*Herein the court reexamined and reaffirmed its conclusion* in the
Loewenthal & Co. case, supra, and, giving superior force to an ascer-
tained congressional purpose to group all "beaded articles" (wholly
or in chief value) within paragraph 333 for dutiable purposes, held
that principle controlling of decision.

In that case, as in Loewenthal & Co.'s case, supra, there was
directly and necessarily involved the amplitude and competitive
force of each of the competing paragraphs, one of which was para-
graph 333. Of two competing paragraphs considered and construed
by the court it would be an anomalous ruling to say that those
determinations affecting the paragraph under which the goods were
held *not* included were not and those affecting the paragraph under
which the goods were held dutiable were obiter. In that case the
goods were held dutiable under paragraph 333 and the construction
of that paragraph relied upon herein is the construction there
announced. The court undertook and therein decided after careful
review of the authorities and statutes that issue. That conclusion
has been followed by this court as authority and the basis of decision
in Bloomingdale Bros. et al. *v.* United States (8 Ct. Cust Appls.,
314; T. D. 37596), wherein the Government, accepting as settled
law the foregoing decisions, sought to overcome the same in part
by commercial testimony, this court holding that commercial testi-
mony insufficient.

It will be noted that the only invasion of paragraph 333 permitted under the rule approved in the American Bead Co. case supra, is "by some other clearly and more specifically expressed intention of Congress."

It follows from the foregoing that an eo nomine designation is not such.

It must and logically can only be invaded, in view of the authorities cited, by a shown contrary *intention of Congress*, so worded or shown to exist, to equally exclude the therein rated merchandise from interference of this and other provisions of the act. For examples: In the American Bead Co. *v.* United States case, supra; Unites States *v.* Bartiromo (9 Ct. Cust. Appls., 183; T. D. 38003); United States *v.* Battiloro, etc. (9 Ct. Cust. Appls., 180; T. D. 38002), this court held that Congress intended the jewelry paragraphs so exclusively provided for jewelry and jewelry materials. That is upon the principle that the jewelry provision evidences an intent upon the part of Congress to include therewithin all jewelry articles and materials, and therefore becomes exclusive of all other paragraphs and inclusive of all jewelry articles and materials, that intent of Congress having been deduced by this court, as was done by the Supreme Court in De Forest et al. *v.* Lawrence (13 How., 54 U. S., 274–281), wherein it was said:

Congress, in legislating on the subject of duties, has described an article so as to identify it by a given designation for revenue purposes, and this has been so long continued as to impress on it a particular designation as an article of import, then it must be treated as a distinct article, whether there be evidence that it is so known in commerce or not. It must be taken as thus known in the sense of the revenue laws, by reason of the legal designation given to it, and by which it has been known and practiced on at the customhouse.

It is but fair to presume, after having been treated by the lawmakers for a considerable length of time as an article known by this designation, with a view to the assessment of the rate of duty upon it, that, if intended to be charged specifically or by enumeration the designation by which it was known to them would have been used, instead of the one known to trade and commerce, if that should be different.

Of course Congress did not exhaust this class of legislation in paragraph 333.

Bearing in mind the foregoing considerations let us repeat, for more immediate reference, the competing provision of paragraph 347:

347. * * * Artificial and ornamental fruits, grains, leaves, flowers, and stems or parts thereof, *of whatever material composed*, not specially provided for in this section, * * *. (Italics ours.)

The court deduced the legislative purpose to make paragraph 333 inclusive from its legislative history, and the therein recited action of Congress in framing the act of 1913, in eliminating from all other paragraphs many and all references to "beaded" articles and materials by name, most convincing evidences of a congressional pur-

pose to make that paragraph inclusive of all beads and beaded articles. No such history or congressional action is here shown or claimed. The only claimed evidence of such as to this provision is the component phrase "of whatever material composed." Are these words per se, as herein written, sufficient evidence upon which to find a congressional intent to make this provision exclusive and intended by Congress to reach out into all other provisions of the act and gather herewithin all articles answering to its terms ? Careful analysis would seem to answer that question in the negative.

In the absence of some significant legislative history, or convincing congressional acts of inclusiveness relating to the provision, it would be difficult to defend a decision that these words evidence a congressional purpose to make this phrase exclusive of all other paragraphs of the act, when immediately following and as a part of the provision occurs the words "not specially provided for in this section." Literally and grammatically the words relate to the foregoing enumerations "artificial and ornamental fruits, grains, leaves, flowers," etc., which naturally are constructed of numerous materials not common or congruous with the fibers of such articles, and this phrase is more likely intended by Congress to include within the preceding enumerations all such imitations, however crude. The phrase is intended by Congress to define the scope of the preceding enumerations and evidences only the intent of Congress as to the latitude of those enumerations, and is not intended to evidence an intent of Congress to make this provision paramount over all other provisions of the act. In that view these words only define the scope of the preceding enumerations, and, having so done, their intended force is spent, and we must look to these enumerations as thus amplified by Congress to determine the competitive force of the provision as to other parts of the act. The result is that it has only the contesting energy of an eo nomine provision.

The phrase, in its intended application and effectiveness, may be illustrated by another common to tariff legislation, "by whatever name known." The Supreme Court, in Mason v. Robertson (139 U. S., 624–627), held that the full legislative import of that term is an equivalent to an enumeration by name of every article named or described in the enumeration of which it is a part. This court also took that view [United States v. Snow's United States Sample Express Co. (8 Ct. Cust. Appls., 351; T. D. 37611)], but ruled that it would not prevail as against a provision which the court adjudicated Congress had intended as exhaustive.

Precisely the same principle, as to that phrase, was applied by this court in United States v. Field (7 Ct. Cust. Appls., 430; T. D. 36985).

That Congress viewed the phrase "of whatever material composed" as relating to and of the force above stated only, and that other language was employed when it wished to adopt words of the paragraph expressive of an intent to make the particular provision paramount, is evidenced by the employment by Congress for the latter purpose of other words than the quoted phrase *in the same sentence*. Thus paragraph 459 of the tariff act of 1897 in part read:

459. * * * Other pipes and pipe bowls *of whatever material composed,* and *all smokers' articles whatsoever,* not specially provided for in this act, * * *. (Italics ours.)

The employment by Congress of additional and different words expressive of its intent to make the phrase inclusive is a legislative interpretation.

That such was the view of this court is witnessed by the fact that in construing this provision and holding its language indicative of a congressional purpose to make the same exclusive, the latter and not the former italicized words were predicated in support of that conclusion.

Thus in Knauth *v.* United States (1 Ct. Cust. Appls., 334; T. D. 31432), which said decision has been repeatedly followed by the court, we said:

The phrase as used in the statute, "all smokers' articles whatsoever," is exceedingly comprehensive. The use of both words "all" and "whatsoever" seems to leave little doubt as to the intention of the legislature. "Whatsoever" is an intensified form of "whatever." The uniform definition is "of whatever nature, kind, or sort; * * * what thing or things soever; *no matter what thing or things;* * * *."

The intensified form of the expression used, together with the far-reaching effect of the qualifying words stated, manifests to our mind a purpose on the part of the legislature to reach out into all branches of trade and commerce and to gather within the dutiable provisions of this paragraph everything used chiefly by smokers, in that pursuit, and for that purpose, wherever else they may occur or within whatever other provisions of the tariff law the merchandise may be included.

From the foregoing considerations, however, it would appear that the phrase was not used by Congress with intent of exclusiveness, and that, in that view under the said rule of controlling importance, these importations should be rated for duty under paragraph 333 as held by the board.