(C. D. 1465)

LOUIS WEINBERG ASSOCIATES, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 1, 1952)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Joseph E. Weil* and *Richard E. FitzGibbon*, special attorneys), for the defendant.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: Merchandise, invoiced as "Straw Bandings," was classified as artificial flowers under paragraph 1518 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, supplemented by Presidential proclamation, 83 Treas. Dec. 149, T. D. 51898, carrying a dutiable rate of 45 per centum ad valorem.

Two items are involved. One is described as "116 pieces Pat. No. 1613, 10 yards long, Straw Bandings (Straw c. v.), N a t u r a l." The official sample, exhibit 1, shows the item to be of natural straw, consisting of concentric circles (approximately 1½ inches in diameter), a nub or tip being in the center of each. The other item appears on the invoice as "80 pieces Pat. No. 1613, 10 yards long, Straw Bandings (Straw c. v.)—46 pcs. kelly—34 pcs. Moss," which, as disclosed by the sample (exhibit 2), is the same, except in color, as the first item. The record establishes that "kelly" refers to green color, and "moss" is representative of olive drab.

Plaintiff makes several claims. The original protest alleges classification as braids in chief value of straw, claiming for the item of "natural" straw, the rate of 7½ per centum ad valorem as provided

in paragraph 1504 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, supplemented by the Presidential proclamation, 83 Treas. Dec. 166, T. D. 51909; and, for the colored material, the rate of 20 per centum ad valorem under said modified paragraph 1504 (a), supplemented by Presidential proclamation, T. D. 51909, *supra*. By valid amendment to the protest, claim is made for classification as manufactures of straw, not specially provided for, with duty assessment at the rate of 12½ per centum ad valorem under paragraph 1537 (a) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, *supra*. An alternative claim is made for classification as a nonenumerated manufactured article under paragraph 1558 of the Tariff Act of 1930, with duty at the rate of 20 per centum ad valorem.

The sole witness was the vice president of the plaintiff corporation, an importer of various kinds of merchandise, including straw articles, for the millinery and dress industries. Based upon personal observation of the method pursued in manufacturing the present merchandise, the witness described the process substantially as follows.

Fibers of straw are braided to a desired width. The braided straw is "remailled" into a circular design, called a "medallion." Series of these designs are laced together, the chain-like unit being a "straw banding." All of the imported straw bandings were 10 yards in length. They are exclusively used in millinery. Illustrative of such use is a hat (illustrative exhibit 3) composed entirely of straw bandings which have been sewn together into the finished article.

*Coro, Inc.* v. *United States*, 39 C. C. P. A. 154, C. A. D. 478, cited by both parties in their respective briefs, is the latest expression by the appellate court, concerning classification of merchandise as artificial flowers. In that case, the article was a brooch, composed of metal and glass, in the form of a conventional flower, and used for costume jewelry designed to be attached to dresses, coats, and hats of women as ornaments. Rejecting classification of the merchandise as artificial flowers, the court said:

In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

The reasoning, as set forth in the above quotation, has equal application to the present case. Here, the straw bandings under consideration are merely conventional designs, joined together in continuous length extending for 10 yards, and exclusively employed in the milli-

nery trade. Neither in appearance nor in general characteristics are they adaptable for "the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted." To repeat what was said in the *Coro, Inc.*, case, *supra*, "It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding."

Defendant's brief reviews several cases to support argument that the merchandise at bar is properly dutiable as artificial flowers. *Tuska, Son & Co. et al.* v. *United States*, 2 Ct. Cust. Appls. 325, T. D. 32053; *Hirshbach & Smith* v. *United States*, 5 Ct. Cust. Appls. 124, T. D. 34169; *Bayersdorfer & Co.* v. *United States*, 7 Ct. Cust. Appls. 66, T. D. 36390; *Morimura Bros.* v. *United States*, 8 Ct. Cust. Appls. 111, T. D. 37223; *United States* v. *American Bead Co.*, 9 Ct. Cust. Appls. 193, T. D. 38044; *Johnson & Co.* v. *United States*, 10 Ct. Cust. Appls. 54, T. D. 38333; *United States* v. *U-Neak Dinner Favors (Inc.)*, 11 Ct. Cust. Appls. 391, T. D. 39316; *Blumenthal & Co.* v. *United States*, 14 Ct. Cust. Appls. 17, T. D. 45113; *Robinson-Goodman Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 149, T. D. 43473; *Altman & Co.* v. *United States*, 15 Ct. Cust. Appls. 318, T. D. 42488; *United States* v. *Frank P. Dow Co., Inc.*, 17 C. C. P. A. (Customs) 455, T. D. 43915; *F. W. Woolworth Co.* v. *United States*, 60 Treas. Dec. 1351, Abstract 17727. Those cases, which arose under different tariff acts varying in statutory language, involved all kinds of merchandise. Each is decisive only of the particular commodity presented therein. None of them is controlling of the articles under consideration, as shown by the following brief outline of each.

The *Tuska, Son & Co. et al.* and *Hirshbach & Smith* cases, *supra*, arose under the Tariff Act of 1909, wherein paragraph 438 contained the provision for artificial or ornamental leaves, of whatever material composed, not specially provided for. In both of said cases, the merchandise was classified under that provision, and claimed to be dutiable according to the material of which composed; the toy shamrocks, in the *Tuska, Son & Co. et al.* case, as manufactures of silk, and the colored paper leaves, in the *Hirshbach & Smith* case, *supra*, as paper, embossed or die-cut into shapes. Based on a finding in each case that the merchandise simulated in all material respects the natural product, the court sustained the collector's classification as artificial leaves. In this case, the straw bandings in question are not representative of a flower, either in structure or in physical characteristics.

The *Bayersdorfer & Co.* case, *supra*, construed statutory language which appeared for the first time in the Tariff Act of 1913 (paragraph 347), as it provided for artificial *and* ornamental flowers. Use of the conjunction "and" was a material departure from the predecessor paragraph in the Tariff Act of 1909 (paragraph 438), which provided for artificial *or* ornamental flowers. The court considered the word

"and" in its grammatical sense, and, accordingly, held that articles, to be classifiable as artificial flowers under said paragraph 347, must be artificial *and* ornamental. The reasoning was also applied in the *U–Neak Dinner Favors (Inc.)* case, *supra*, as the court excluded from classification as artificial and ornamental fruits, grains, or leaves, certain plaster-of-paris pumpkins, lemons, sprouting onions, and ears of corn, because the articles were not ornamental within the ordinary meaning of the term. The statutory construction invoked in those two cases has no bearing on the present issue.

The *Morimura Bros.* case, *supra*, concerned classification of artificial pears and apples chiefly used as pincushions. The court found the articles to be "of such rare perfection in their close and skillful resemblance to the natural fruit that at even close range the eye is deceived as to their artificial character." The importer there presented the case on the theory that utilitarian use of the articles removed them from classification as artificial fruits. In overruling such claim, the court said "the per se character and not the ultimate or intended use of the articles must control decision." Both the character of the merchandise and the issue in the said case were materially different from the articles and the questions before us in this case.

The *American Bead Co.* and *Johnson & Co.* cases, *supra*, which also arose under the Tariff Act of 1913, were based on findings that the articles there under consideration simulated flowers and leaves and were designed for ornamental use. No such factual basis exists herein.

The significance of the *Blumenthal & Co.* case, *supra*, is the all-inclusive effect given to the statutory language "by whatever name known and to whatever use applied and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments," that appeared in paragraph 1430 of the Tariff Act of 1922. The court held that the quoted language invaded the provision for "artificial or ornamental fruits * * * leaves, flowers, and stems or parts thereof," excluding therefrom clusters, sprays, and wreaths of artificial flowers, fruits, and leaves, made of silk or cotton yarns, threads, and filaments. The *Robinson-Goodman Co.* case, *supra*, was presented on an issue of commercial designation, a principle that is not raised herein. The judicial pronouncements in the last two cited cases have no influence on the present issue.

The *Altman & Co.* case, *supra*, was presented solely on a question of law, the court concluding that the provision for articles composed in chief value of artificial flowers was more specific than manufactures in chief value of shell. Relative specificity is not a consideration in this case.

In the *Frank P. Dow Co., Inc.*, case, *supra*, relating to paper water flowers, the competing provisions were "toys," the classification

adopted by the collector, and manufactures of paper, alleged by the importer. Claim for classification as artificial flowers did not enter that controversy, but was raised on a later shipment of the same class of merchandise, in the *Woolworth* case, *supra*, which sustained the said claim upon a finding that the articles, when unfolded after being immersed in water, made a very ornamental object, simulating small flowers, a shape which they retained indefinitely. No comparable statement can be attributed to the straw bandings under consideration.

Having determined that the merchandise in question is not artificial flowers, as classified by the collector, we turn now to plaintiff's claims, considering, first, the principal one, urging classification as "braid," which is defined in recognized dictionaries as "A narrow flat tape or woven strip for binding the edges of fabrics or for ornamenting them" (Funk & Wagnalls New Standard Dictionary), or as "A plait, band, or narrow fabric formed by intertwining or weaving together different strands" (Webster's New International Dictionary).

Under the quoted definitions, the straw bandings in question are something more than braid. Each is an article resulting from a series of hand processes, of which braiding is only one. The basic material, fibers of straw, is braided to proper width. Further manipulation, called "remailling," creates the conventional designs, termed "medallions," that are finally laced together to complete the straw banding, extending 10 yards in length. The combined operations have produced a manufactured straw product, dedicated to exclusive use in the millinery industry. We, therefore, find that these straw bandings are manufactures of straw, for which there is no specific provision in tariff legislation.

While paragraph 1537 (a), as modified, *supra*, includes a provision for "Manufactures of   *   *   *   straw   *   *   *   not specially provided for," the category is limited in scope under a proviso, within said paragraph, as originally enacted, reading as follows:

*   *   *   The terms "grass" and "straw" mean these substances in their natural state and not the separated fibers thereof.

The foregoing quotation has been construed in a line of cases, holding that the said statutory language excludes from classification as manufactures of straw, any articles of straw in a dyed state. *United States* v. *Gage Bros. & Co.*, 8 Ct. Cust. Appls. 306, T. D. 37584; *United States* v. *International Forwarding Co.*, 8 Ct. Cust. Appls. 378, T. D. 37632; *United States* v. *Rosenthal-Sloan Millinery Co.*, 8 Ct. Cust. Appls. 380, T. D. 37633; *Isler & Guye* v. *United States*, 10 Ct. Cust. Appls. 74, T. D. 38339; *Akawa, Morimura & Co.* v. *United States*, 11 Ct. Cust. Appls. 418, T. D. 39432. The effect of such restriction on the merchandise under consideration is to limit application of paragraph 1537 (a), as modified, *supra*, to the straw bandings

of natural straw, and to eliminate from the said paragraph the articles which are concededly composed of dyed straw. Accordingly, we hold as follows:

(1) The straw bandings, represented by the invoice item described as "116 pieces Pat. No. 1613, 10 yards long, Straw Bandings (Straw c. v.), N a t u r a l," are classifiable as manufactures of straw, not specially provided for, under paragraph 1537 (a), as modified, *supra*, and dutiable thereunder at the rate of 12½ per centum ad valorem.

(2) The straw bandings of dyed straw, covered by the invoice item "80 pieces Pat. No. 1613, 10 yards long, Straw Bandings (Straw c. v.)—46 pcs. kelly—34 pcs. Moss," are manufactured articles, and, not otherwise provided for, are relegated for classification under paragraph 1558 of the Tariff Act of 1930 as nonenumerated manufactured articles, with duty assessment at the rate of 20 per centum ad valorem.

Those claims made by plaintiff are sustained, and judgment will be rendered accordingly.