(C. D. 1747)

De Waubert, Inc.
N. M. Albert Co., Inc. } v. United States

United States Customs Court, First Division

(Decided January 5, 1956)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before Oliver, Mollison, and Wilson, Judges

Wilson, Judge: The merchandise involved in this case consists of certain earthenware ornaments and was assessed for duty by the collector at 45 per centum ad valorem under paragraph 1518 of the Tariff Act of 1930, as modified by the President's proclamation supplementing the General Agreement on Tariffs and Trade, T. D. 51898, as artificial flowers, composed wholly or in chief value of materials other than "yarn, threads," etc.

Plaintiffs claim that the involved importation does not consist of artificial flowers in the tariff sense and that it is properly dutiable at 5 cents per dozen pieces and 25 per centum ad valorem under paragraph 211 of the tariff act, as modified by the trade agreement with Mexico, T. D. 50797, as decorated earthenware.

The competing paragraphs referred to, *supra*, so far as pertinent, read as follows:

Paragraph 1518:

Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof; and boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the foregoing:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

When composed wholly or in chief value of other materials and not specially provided for:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other_____45% ad val.

Paragraph 211:

Earthenware and crockeryware composed of a nonvitrified absorbent body, including white granite and semi-porcelain earthenware, and cream-colored ware, terra cotta, and stoneware, including clock cases with or without movements, pill tiles, plaques, ornaments, charms, vases, statues, statuettes, mugs, cups, steins, lamps, and all other articles composed wholly or in chief value of such ware; \* \* \*:

Painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for_____ 5¢ per doz. pieces, and 25% ad valorem

*Provided*, That if the body of such ware is covered wholly or in part with an engobe or a body slip, the engobe or body slip shall for the purposes of this provision be considered a part of the body.

At the trial of the case, the following stipulation was entered into between counsel for the respective parties:

\* \* \* that the body of the articles involved herein, and any engobe or body slip in the manufacture of these articles, is wholly of clay and not artificially colored in accordance with paragraph 211. (R. 5.)

Harry Linton, called on behalf of the plaintiffs, testified that he was then, and for 3 years preceding had been, the sales manager of De Waubert, Inc., the importer herein; that the importer was engaged in business as a hand painter and decorator of mirrors, boxes, vases, sunglasses, and other objects. He further testified that his company imported some of the materials that it painted for decorative purposes. Mr. Linton stated that he was familiar with the merchandise involved in this case and identified plaintiffs' exhibit 1 as being from the importation under consideration. He further stated that merchandise, such as plaintiffs' exhibit 1, is not employed or sold as a separate article but is used to decorate other objects, such as mirrors, illustrated by plaintiffs' exhibit 2; that articles, such as plaintiffs' exhibit 1, are pasted on and become a permanent part of mirrors, such as

plaintiffs' illustrative exhibit 2. The witness further testified that decorative objects, of which exhibit 1 is representative, are used in great quantities as knobs on boxes, such as musical powder boxes (plaintiffs' illustrative exhibit 3). His pertinent testimony on the latter phase of the case is as follows:

Q. On what objects do you use Plaintiff's Exhibit #1 by way of decoration?—A. We have done a big job on them on mirrors.

Q. Do you have a sample of that?—A. The mirrors come in different sizes, but this is the sample we keep before us; we are primarily concerned, you see, with hand painting, but we put on this ornament just in this fashion here. * * *

\* \* \* \* \* \* \*

Q. Now referring to Plaintiff's Illus. Ex. #2 for Identification, just what do you do with Plaintiff's Exhibit #1 in decorating Plaintiff's Exhibit #2?—A. Just —— well, we paste it on the mirror just as you see here; we cement it on and the artist paints around it to give it decoration.

Q. Was it your testimony that [sic] is usually done on mirrors?—A. Yes.

CHIEF JUDGE OLIVER: As it is received by you, is that surface matter on it, or is it white?

WITNESS: It is in that same color.

CHIEF JUDGE OLIVER: You don't paint Plaintiff's Exhibit #1?

WITNESS: No, we get them that way.

\* \* \* \* \* \* \*

Q. Are there other uses that you make of the articles involved in this particular protest?—A. Yes, here's a box that belongs to a manufacturer, we have done thousands of these boxes and they use it as a little knob; we are concerned with the hand painting.

Q. You use an object like Plaintiff's Exhibit #1 which you paste on top of the box?—A. Yes.

Q. Do you know what type of box that is?—A. Yes.

Q. How do you know that?—A. We have made so many of them, thousands of them.

Q. What is that box?—A. It is a musical powder box. (R. 6–7.)

The musical powder box was then introduced in evidence as illustrative exhibit 3, with a decoration similar to plaintiffs' exhibit 1 attached to the top of it. Mr. Linton then testified further as follows:

Q. During the course of your experience with this firm, have you used Plaintiff's Exhibit #1 on articles similar to Plaintiff's Exhibit #1 in any other method that, or other than that you have just described?—A. I can't recall offhand.

Q. Have you seen articles similar to Plaintiff's Exhibit #1 used in any other way other than the way you have described?—A. I have never seen this object used any other way. (R. 8.)

Under cross-examination, Mr. Linton testified as follows:

X Q. Does Plaintiff's Exhibit #1 in your opinion simulate a red rose?

. \* \* \* \* \* \* \*

A. Frankly, I don't know, but from my years in this line it does not.

X Q. Have you ever seen a red rose?—A. I have.

X Q.   Does Plaintiff's Exhibit #1 look like a red rose?—A.   No.

X Q.   What does Plaintiff's Exhibit #1 look like?—A.   I would say a pottery decoration.

X Q.   In your opinion does Plaintiff's Exhibit #1 look like a flower?—A.   It looks like a floral decoration, I will say that.   (R. 8–9.)

Defendant called as its only witness, Irving Gross, customs examiner of ceramics, including earthenware and china articles.   The only question propounded to Mr. Gross was the following:

Q.   In your opinion does the importation consist of artificial flowers?

To this interrogation, the witness answered "Yes."   There was no cross-examination.

In support of their claim, the plaintiffs rely upon the case of *Coro, Inc.* v. *United States,* 39 C. C. P. A. (Customs) 154, C. A. D. 478. In that case, the involved importation consisted of certain costume jewelry, designed to be attached to dresses, coats, and hats of women as ornaments, and was classified under paragraph 1527 (a) of the Tariff Act of 1930, as amended by T. D. 50797, *supra,* and paragraph 1518 of the same act as jewelry in chief value of artificial flowers. A sample of the imported goods received in evidence in the *Coro* case, *supra,* was described in the opinion of the court, at page 156, as follows:

The exhibit is in the form of a pin or brooch.   It is composed of metal and glass.   Aside from the pin portion, the brooch consists of three layers of metal in trefoil form superimposed one on another in successively smaller diameters. The trefoil portions are black in color with a bright silver-like edging.   In the center of the outer face of the brooch there is mounted on a short post of seemingly cheap metal, a piece of glass with facets thereon like those of a round cut diamond. The portion of the brooch apart from the pin may be said to be in the form of a conventional flower.

The testimony discloses that the articles are used for costume jewelry designed to be attached to dresses, coats, and hats of women as ornaments.   There is nothing in the record to show that the flower-like portion of the exhibit is ever used by itself or for use in ornamenting wearing apparel.

"The sole question for decision here," said the court, "is whether the involved merchandise consists in chief value of artificial flowers."

Both parties in their briefs in the *Coro* case, *supra,* relied upon the case of *Cochran Co. et al.* v. *United States,* 10 Ct. Cust. Appls. 62, T. D. 38336.   The merchandise involved in that case consisted of "a cluster made of black straw wound into the form of berries or grapes and set on a black-straw leaf attached to a stem made of black straw and metal.   * * * a spray of black leaves bearing a black rose. The spray and rose are composed of black straw sewed with black thread to a stiff woven fabric which serves the purpose of a foundation * * *."   The court held the involved merchandise properly classifiable as artificial flowers.

In so holding, the court stated:

It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem.   Nevertheless, both come within the tariff designation of "artificial and

ornamental fruits, grains, leaves, flowers, and stems," inasmuch as they are articles which simulate the natural fruit, flower, leaf, or stem in its physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits produced not by nature, but by the hand of man, and which at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.

The appellate court, in the *Coro* case, *supra*, differentiated the merchandise then before it from the importation in the *Cochran* case, *supra*, setting forth its views in the following statement:

We desire to draw particular attention to the latter portion of that quotation which determined that, even though the artificial articles possess the attributes and qualities set forth in the previous portion of the quotation, those articles must be such that they "* * * at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted."

In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

The heart of the plaintiffs' contention appears to be that, in order to be classified as artificial flowers, merchandise must be such that it can be used as a substitute for natural flowers and that the test is not merely whether the involved material resembles flowers.

The Government, on the other hand, states the issue from its point of view as follows:

Is Plaintiff's Exhibit 1, which clearly simulates a rose, and is used for various ornamental and decorative purposes, an artificial or ornamental flower?

In maintaining that the foregoing question should be answered in the affirmative, the Government argues three points:

1. The sample of the importation, Plaintiff's Exhibit 1, is an artificial flower and/or an ornamental flower.
2. The Plaintiff has failed to sustain its twofold burden.
3. The Collector's classification is not necessarily inconsistent with the *Coro* case, upon which the importer relies.

The defendant places great emphasis upon a visual examination of exhibit 1 and contends that such an examination indicates that the specimen in evidence is artificial; that it is ornamental; and that it simulates a flower in color and design. The defendant cites in its brief a number of cases which it contends "have held * * * that a sample is often a potent witness." Of course, with that contention no one will disagree, nor can it be persuasively urged that the sample of the imported merchandise, exhibit 1, does not in a limited way resemble an artificial or ornamental flower. However, we do not

believe that, under the *Coro* case, or as a matter of logical deduction, it follows that the merchandise in question should be classified as artificial flowers.

It is quite true, as contended by the defendant, that the record in this case is brief. Furthermore, it must be accepted as elementary in customs law that there is a presumption of correctness in favor of the collector's classification. In determining, however, whether the plaintiffs have overcome the presumption of correctness in favor of the collector, the length of the record is of no importance. Frequently, long, involved records are less persuasive than brief cogent evidence. We are of the opinion that the testimony overcomes the presumption of correctness of the collector's classification.

The defendant contends that the *Coro* case, *supra*, "is not necessarily inconsistent with the Collector's classification in the case at bar," because the merchandise here involved is not similar to the merchandise in the *Coro* case.

While it is true that, in the *Coro* case, *supra*, the involved merchandise was costume jewelry in the form of brooches and in the present case the merchandise is composed of earthenware, that difference does not furnish a proper basis for distinguishing the instant case and the *Coro* case.

It is also true, as set forth in defendant's brief, that the collector did classify the merchandise in the *Coro* case, *supra*, under the provisions of paragraph 1527 (a) (2) as jewelry, yet it was assessed under paragraph 1518 as being in chief value of artificial flowers. Basically, however, the court considered the question from the standpoint of use, and it cannot be successfully urged that artificial flowers are appropriate and suitable to be attached permanently to mirrors and earthen or metal boxes, with the evident intent that the attached decorations will endure as long as the materials to which they are attached. Artificial flowers could not, therefore, be substituted for exhibit 1 for permanent decorative purposes.

In support of its contention that the merchandise involved consists of artificial flowers, the Government cites a number of cases which we now consider.

In the case of *La Bomboniera, Inc.* v. *United States*, 23 Cust. Ct. 134, Abstract 53404, the involved merchandise was described on the invoice as "confectionery flowers." The collector classified and assessed the importation under paragraph 1518, but the importer claimed the material properly dutiable under paragraph 506, as modified, which makes provision for sugar candy and other confectioneries, not specially provided for.

As disclosed by the record therein, the merchandise in the *La Bomboniera* case, *supra*, unlike the merchandise at bar, was not

intended to be attached permanently to any article, but consisted of perishable merchandise used for temporary decorative purposes, even at weddings.

The case of *Bullocks, Inc.* v. *United States*, 13 Cust. Ct. 62, C. D. 870, was decided in 1944, 8 years prior to the *Coro* case, *supra*, decided by the United States Court of Customs and Patent Appeals in 1952, and wherever inconsistent with the appellate case must, of course, yield.

There are insufficient facts given in the case of *Halle Bros. Co.* v. *United States*, 47 Treas. Dec. 948, Abstract 48790, to enable one to determine upon what the court bases its decision.

The case of *L. Bamberger & Co.* v. *United States*, 55 Treas. Dec. 367, T. D. 43238, is clearly distinguishable from the case now under consideration. In the *Bamberger* case, the articles under consideration were "ornaments in a lady's boudoir * * * referred to as ornamental perfume burners, * * * which are built upon and around a spiral, rubber-covered wire which forms the base and main stem." Attached to the top portion of the spiral wire were shells, representing leaves and petals of a rose, and in the center of the flower was a small electric-light bulb. A small cup, which was cemented to the top of the bulb, was used for holding perfume, and yellow petals were used to simulate a yellow rose and pink petals to simulate pink roses. The green-covered wire represented a flower stem, and the light in the center of the flower represented the stamens and pistils of the flower. The shells used were so thin that the light shone through them and gave a color effect to the room.

Even with this set of facts before it, the court held that the merchandise did not consist of artificial flowers. The following language is quoted from the court's opinion on page 371:

The Government also argues, however, that if they are not dutiable as articles in chief value of artificial flowers under paragraph 1419, they are dutiable under the paragraph as articles "in chief value of flowers and parts thereof," because the record shows that all of the shells imitate petals or leaves and that the articles were completed by putting them together.

With this contention we agree. The latter part of the paragraph reads, "boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or *in chief value of any of the feathers, flowers, leaves, or other material herein mentioned.* We think this provision is broad enough to include the importation at bar. If "flowers, leaves, or other material herein mentioned" is read in connection with "flowers, and stems or parts thereof," then the leaves and petals at bar which existed in their finished form before being manufactured into the article must be taken into consideration. [Italics quoted.]

In the case now before us, there are no leaves, stems, pistils, or stamens. A visual examination of plaintiff's exhibit 1 clearly indicates that it is composed of certain ceramics of uniform color and composition attached to a clay center, which is flat on the bottom, and which, according to the stipulation of the parties, has a body or

body slip, composed wholly of clay, not artificially colored. The exhibit has nothing representing a stem; on the contrary, it has a flat bottom, like a dish, so that it can be cemented to any flat object. The merchandise at bar is entirely different from that involved in the *Bamberger* case, *supra*.

Other cases, to which our attention has been directed by the defendant, wherein the merchandise under consideration was held dutiable either as artificial flowers or as articles, not specially provided for, wholly or in chief value of artificial fruits, flowers, or leaves (*M. Pressner & Co. et al.* v. *United States*, 6 Cust. Ct. 55, C. D. 425; *Geo. S. Bush & Co., Inc.* v. *United States*, 5 Cust. Ct. 347, Abstract 44492), are likewise not controlling in determining the classification of the merchandise at bar. The merchandise involved in the above-cited cases, unlike that here in question, truly represented a conventional flower having stems, leaves, petals, and buds, or simulated the natural flowers, fruits, or leaves in form, shape, and color to a remarkable degree.

The Government, in its brief, also cites the case of *United States* v. *American Bead Co.*, 9 Ct. Cust. Appls. 193, T. D. 38044. In that case, the collector classified the merchandise under paragraph 347 of the Tariff Act of 1913 covering "artificial or ornamental feathers suitable for use as millinery ornaments, artificial and ornamental fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed."

Paragraph 1518 of the Tariff Act of 1930, so far as applicable, covers "artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof, * * *; when composed wholly or in chief value of other materials and not specially provided for." It will be observed that there is considerable difference in the language of paragraph 347 of the Tariff Act of 1913 and paragraph 1518 of the Tariff Act of 1930, and that the *American Bead Co.* case is not an authority which can guide us in deciding the classification of the merchandise here involved.

We are not impressed with the defendant's argument that the merchandise under consideration should be classified as artificial or ornamental flowers on the principle of specificity, it being the defendant's contention that the *eo nomine* provision in section 1518 for artificial or ornamental flowers is more specific than the provisions of paragraph 211.

In support of its contention that the principle of relative specificity applies, the Government cites the case of *Hirshbach & Smith* v. *United States*, 5 Ct. Cust. Appls. 124, T. D. 34169. In this latter case, the court observed that:

The merchandise is truly described in the evidence and in the opinion of the board as paper leaves of various colors. It was assessed for duty under paragraph 438 of the tariff act of 1909, the relevant portion of which relates to—

Artificial or ornamental feathers, fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material composed, not specially provided for in this section.

The importer in the *Hirshbach & Smith* case, *supra*, claimed the merchandise properly dutiable under paragraph 415 of the pertinent act, which provided for "paper embossed, or cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms * * * not specially provided for in this section." In that case, there was no evidence, as the court pointed out, to support the importer's contention that the merchandise had "been embossed and die cut," and the court refused to take judicial notice that the merchandise had been so treated. The court held, however, that even though such processes had been used it still thought the merchandise had been properly classified by the collector.

It must be pointed out that paragraph 211, under which the importer claims the merchandise under consideration properly classifiable, provides for earthenware, the body of which is not artificially colored and is composed wholly of clay, which is clearly descriptive of the body of exhibit 1. Furthermore, as has been pointed out several times previously in this opinion, exhibit 1 now before us lacks most of the essential parts of an artificial flower and, by use, is limited strictly for the purposes testified to by plaintiffs' witness.

We are of the opinion and hold that the merchandise before us is properly classifiable under the provisions of paragraph 211 of the Tariff Act of 1930, as modified by the trade agreement with Mexico, T. D. 50797, at the rate of 5 cents per dozen pieces and 25 per centum ad valorem as decorated earthenware, as claimed. The claim in the protest to that extent is sustained.

Judgment will be entered accordingly.