MORIMURA BROS. *v.* UNITED STATES. (No. 1805).[1]

1. CONSTRUCTION, PARAGRAPH 347, TARIFF ACT OF 1913—"ARTIFICIAL AND ORNAMENTAL FRUITS"—CONSTRUCTION AIDED BY CONTEXT.

The words "artificial and ornamental," modifying the word "fruits" in paragraph 347, tariff act of 1913, refer to the per se character, and not the intended use, of the fruits. That this is true is indicated by the fact that in the same paragraph feathers in various physical conditions are dutiable at one rate and "artificial or ornamental feathers suitable for use as millinery ornaments" at another.

---

[1] T. D. 37223 (32 Treas. Dec., 623).

2. ARTIFICIAL AND ORNAMENTAL FRUITS USED AS PINCUSHIONS.
    Artificial and ornamental pears and apples, chiefly used as pincushions, are
dutiable as "artificial and ornamental fruits" (par. 347, tariff act of 1913).

United States Court of Customs Appeals, May 14, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40400.

[Affirmed.]

*B. A. Levett* for appellants.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of
counsel), for the United States.

[Oral argument April 26, 1917, by Mr. Levett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal concerns the dutiable classification of an importation
from Japan of artificial pears and apples. The samples before the
court are of such rare perfection in their close and skillful resemblance
to the natural fruit that at even close range the eye is deceived as to
their artificial character. The size is that of the natural fruit. The
skin is of artistically colored silk of delicate shades merging from
and blending one into the other with an exquisiteness and fineness of
touch comparable only with those seemingly inimitable colorings of
the natural fruit.

The appeal presents the question, are these articles "artificial and
ornamental fruits," as the term is used in paragraph 347 of the present
tariff act, which, omitting the irrelevant proviso, reads:

347. Feathers and downs, on the skin or otherwise, crude or not dressed, colored,
or otherwise advanced or manufactured in any manner, not specially provided for in
this section, 20 per centum ad valorem; when dressed, colored, or otherwise advanced
or manufactured in any manner, and not suitable for use as millinery ornaments, in-
cluding quilts of down and manufactures of down, 40 per centum ad valorem; artificial
or ornamental feathers suitable for use as millinery ornaments, artificial and orna-
mental fruits, grains, leaves, flowers, and stems or parts thereof, of whatever material
composed, not specially provided for in this section, 60 per centum ad valorem; boas,
boutonnieres, wreaths, and all articles not specially provided for in this section,
composed wholly or in chief value of any of the feathers, flowers, leaves, or other ma-
terial herein mentioned, 60 per centum ad valorem: * * *.

The board made a distinct and positive finding that the articles
were per se both artificial and ornamental and concluded therefrom
that they were so classifiable. The importers are the appellants.
It is, of course, conceded by all parties before this court that the
articles are artificial, and appellants do not seriously contend that
they are not per se ornamental. It is, however, urgently insisted by
appellants that the use of the articles and not their per se character
controls their classification as to whether or not they are ornamental
within the quoted paragraph. It is conceded that they are chiefly

used as pincushions. The sole question for decision herein, therefore, is one of law, whether or not the per se character or the chief use of artificial fruit determines its dutiability under said paragraph.

The context of the paragraph affords light upon the legislative purpose.

In the paragraph the words "artificial" and "ornamental" are used conjunctively, modifying and qualifying among others the word "fruits." Inferentially, if not presumptively, these qualifying words were used by the legislature in the same limiting sense. It will not be questioned that "artificial" relates to and qualifies the word "fruits," and was therefore used in a per se sense and not as indicating use. Any other view would be plainly inapt. Inferentially, if not presumptively, then, the conjoint word of qualification, "ornamental," was so used and refers to the per se character and not the intended use of the fruit.

That the legislature in this enactment had in mind and deemed express language necessary to make use the legal criterion of its application to the articles made dutiable in this paragraph, is conclusively shown in its other parts. Thus, feathers and downs are herein made dutiable in various degrees and states of physical manipulation. When, however, Congress wished to make the ultimate use of feathers and downs for certain ornamental purposes a controlling factor in their dutiable classification it employed the express words "suitable for use as millinery ornaments."

Likewise in the same paragraph when providing that "artificial or *ornamental feathers*" to be ultimately used for millinery purposes should be rated for duty as to use, Congress, thus mindful, so employed the precise necessary words to that end—"suitable for use as millinery ornaments."

The phrase here in question is the very next in statutory order after the last mentioned, and the court can find no warrant, after this repeated employment by Congress in the paragraph of express words so indicating when intending to make use the rule of construction, in holding that Congress likewise intended in the particular phrase here interpreted without express employment of words so effective.

To the same effect is the judicial history of the paragraph as witnessed by the current legal construction of its predecessor provisions of tariff legislation.

Thus paragraph 425 of the tariff act of 1897, one of such predecessor enactments, provided for artificial or "ornamental feathers, fruits," etc., without express qualification or expression as to use. In Brodie *v.* United States (135 Fed., 914) and Spero *v.* United States

(135 Fed., 915) the United States Circuit Court for the Southern District of New York declared the word "ornamental" as therein used related to the per se character of the feathers and not their ultimate use, saying:

I am clearly of the opinion that the condition, and not the use of the feather, governs its classification under said paragraph 425.

Without further appeal or any overruling of this construction of the paragraph that doctrine seems to have been subsequently accepted and followed. In the tariff acts of 1909 (par. 438) and 1913 (par. 347, here invoked), Congress reenacted the phrase "ornamental fruits" significantly in other parts of the respective paragraph, employing express words where use was made the rule of application, but in each act not so legislating as to ornamental fruits. To so read by construction this phrase in the current act would be seemingly to read into the paragraph words advisedly omitted by Congress.

Not only can it be fairly said that the departmental and judicial construction of this and kindred phrases, as appearing in the several preceding tariff enactments, if not uniformly, certainly by a great preponderance of the authorities, has been so construed, but that in this court the question is stare decisis.

In G. A. 7716 (T. D. 35333) merchandise dissimilar, if at all, only in the degree of resemblance to the natural fruit, with the same use—as pincushions—shown by the record and considered by the board, was, in a carefully written opinion reviewing the status of the legislation and adjudications to that date, held to be dutiable within paragraph 347 of the present act.

In Hirshbach & Smith v. United States (5 Ct. Cust. Appls., 124; T. D. 34169), this court in construing, in the instantly considered particular, the predecessor provision to this, paragraph 438 of the tariff act of 1909, and particularly the words "artificial or ornamental feathers, fruits, grain, leaves, flowers, and stems or parts thereof, of whatever material composed" therein, the merchandise being leaves, and, further, expressly predicating the decision upon the "appearance" of the leaves, said:

It can not be said that paragraph 438 is wholly limited to millinery articles, for while it relates to many things that are so used, *it does not make use the test* and clearly includes articles which serve other purposes.

The principle seems well settled, therefore, that the per se character and not the ultimate or intended use of the articles must control decision. See also Woodruff & Co. v. United States (2 Ct. Cust. Appls., 186; T. D. 31942) and Bayersdorfer & Co. v. United States (7 Ct. Cust. Appls., 66; T. D. 36390).

*Affirmed.*