(C.D. 2289)

HENSEL, BRUCKMANN & LORBACHER, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 9, 1961)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: The merchandise in the case at bar consists of certain iron wall ornaments, which were assessed with duty at 35 per centum ad valorem under paragraph 1518 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, as articles in chief value of artificial leaves and stems, chief value of other materials, not specially provided for.

Plaintiff claims the merchandise properly dutiable at the rate of 20 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement

on Tariffs and Trade, T.D. 54108, as articles or wares not specially provided for, wholly or partly manufactured, composed wholly or in chief value of iron, but not plated with platinum, gold, or silver, or colored with gold lacquer.

As representative of the imported merchandise, there was introduced in evidence as plaintiff's illustrative exhibit 1 an article of unpainted metal, approximately 5 feet by 4 feet in overall dimension, in a three-dimensional representation of branches and leaves. There was further received in evidence three exhibits offered by the Government as illustrations of natural flowers that are framed and used to hang on walls as is the importation at bar (defendant's illustrative exhibits A, B, and C).

The parties herein stipulated that plaintiff's illustrative exhibit 1 is composed of iron, not plated with, or in part of, gold, silver, or platinum, or colored with gold lacquer, and that it is used as a wall decoration (R. 3). No testimony was introduced by either party to the controversy.

The issue in the case at bar is whether the imported articles, as represented by plaintiff's illustrative exhibit 1, are artificial leaves or stems within the meaning of paragraph 1518 of the Tariff Act of 1930, as modified, *supra.*

The Government, in support of the classification made by the collector, directs our attention to the holding of the court in the case of *Morimura Bros.* v. *United States*, 8 Ct. Cust. Appls. 111, T.D. 37223. The merchandise there involved consisted of artificial pears and apples, which were chiefly used as pincushions. It was held properly dutiable as artificial and ornamental fruits under paragraph 347 of the Tariff Act of 1913. The parties conceded the involved articles were artificial and appellant therein did not seriously contend that the articles were not *per se* ornamental. However, in contending for classification under paragraph 318 of the act as manufactures of silk, or under paragraph 385 of the said act as *nonenumerated manufactured articles*, the importer had insisted that the use of the articles and not their *per se* character controlled their classification as to whether or not they were "ornamental" within paragraph 347 of the said act. The court stated that the sole question was one of law, namely, whether or not the *per se* character or the chief use of artificial fruit determines its dutiability. In this connection, our appellate court, in the *Morimura Bros.* case, *supra*, page 113, stated:

In the paragraph the words "artificial" and "ornamental" are used conjunctively, modifying and qualifying among others the word "fruits." Inferentially, if not presumptively, these qualifying words were used by the legisture in the same limiting sense. It will not be questioned that "artificial" relates to and qualifies the word "fruits," and was therefore used in a per se sense and not as indicating use. * * *

In reviewing the judicial history of the involved paragraph, the appellate court (page 113) further stated:

That the legislature in this enactment had in mind and deemed express language necessary to make use the legal criterion of its application to the articles made dutiable in this paragraph, is conclusively shown in its other parts. Thus, feathers and downs are herein made dutiable in various degrees and states of physical manipulation. When, however, Congress wished to make the ultimate use of feathers and downs for certain ornamental purposes a controlling factor in their dutiable classification it employed the express words "suitable for use as millinery ornaments."

\* \* \* \* \* \* \*

To the same effect is the judicial history of the paragraph as witnessed by the current legal construction of its predecessor provisions of tariff legislation.

Thus paragraph 425 of the tariff act of 1897, one of such predecessor enactments, provided for artificial or "ornamental feathers, fruits," etc., without express qualification or expression as to use. In Brodie v. United States (135 Fed., 914) and Spero v. United States (135 Fed., 915) the United States Circuit Court for the Southern District of New York declared the word "ornamental" as therein used related to the per se character of the feathers and not their ultimate use, saying:

I am clearly of the opinion that the condition, and not the use of the feather, governs its classification under said paragraph 425.

Without further appeal or any overruling of this construction of the paragraph that doctrine seems to have been subsequently accepted and followed. \* \* \*

\* \* \* \* \* \* \*

In Hirshbach & Smith v. United States (5 Ct. Cust. Appls., 124; T.D. 34169), this court in construing, in the instantly considered particular, the predecessor provision to this, paragraph 438 of the tariff act of 1909, and particularly the words "artificial or ornamental feathers, fruits, grain, leaves, flowers, and stems or parts thereof, of whatever material composed" therein, the merchandise being leaves, and, further, expressly predicating the decision upon the "appearance" of the leaves, said:

It can not be said that paragraph 438 is wholly limited to millinery articles, for while it relates to many things that are so used, *it does not make use the test* and clearly includes articles which serve other purposes. [Italics quoted.]

The principle seems well settled, therefore, that the per se character and not the ultimate or intended use of the articles must control decision. See also Woodruff & Co. v. United States (2 Ct. Cust. Appls., 186; T.D. 31942) and Bayersdorfer & Co. v. United States (7 Ct. Cust. Appls., 66; T.D. 36390).

The applicability of paragraph 1518 of the tariff act to merchandise claimed dutiable thereunder as "artificial or ornamental fruits \* \* \* leaves, flowers, stems, or parts thereof," was passed upon by our appellate court in the recent case of *Marshall Field & Co.* v. *United States*, 45 C.C.P.A. (Customs) 72, C.A.D. 676, decided January 22, 1958. Certain of the merchandise there invoiced as "Iron Works, Metal fruits w/leaves" was described by the court as consisting of "a three-dimensional, realistic representation of a stem about 6 inches

long to which are affixed four short branches, three of which have representations of leaves on them about 3 inches long, and the fourth has an object about 8 inches in circumference attached thereto which looks to us like a small pomegranate with a segment of outer skin removed, exposing the inner cells. The color of the whole is that of slightly rusty iron." There was also involved in the *Marshall Field* case, *supra*, other merchandise invoiced as "Iron pictures of 4 season flowers," which involved a framed representation consisting of "simulated flower stems of roughened wire from which run a number of branches bearing nine leaves and two flowers somewhat like large daisies, the ends of the petals being more or less curled inwardly. The leaves and flowers are formed from light gauge sheet metal and this sample is painted black, though the invoice calls for 'rusty finish.'"

The record in the *Marshall Field* case, *supra*, disclosed that articles, such as the "4 seasons" pictures, came in sets of four; that they were sold singly or in pairs or in the complete set of four and that the flowers represented the four seasons to the Chinese people; that these pictures were used as imported but sometimes a velvet backing is put behind them. It further appeared that both types of the involved merchandise were hung on walls. The merchandise there involved was assessed as artificial fruits or flowers and was claimed to be articles or wares in chief value of base metal, and not artificial fruits or flowers. The court, in the *Marshall* case, considered *inter alia*, the holding of this court in the case of *O. E. Barrant* v. *United States*, 6 Cust. Ct. 516, Abstract 45233, involving, among others, certain articles described as "black wooden frames with iron stems, leaves and flowers finished a dull brown color, designed to be hung on walls." The Customs Court, in the *Barrant* case, *supra*, in holding the latter articles dutiable as artificial flowers, reasoned, as pointed out by the appellate court, that even though natural flowers would probably not be framed, nevertheless, they are often used for wall decoration, which was the same use the iron flower pictures had. In commenting upon this reasoning by the trial court, our appellate court, in the *Marshall Field* case, *supra*, page 75, stated:

\* \* \* This reasoning impresses us as unrealistic from the customs law standpoint. In common understanding natural flowers and pictures have little in common as to use or otherwise. One could as logically argue that a picture of a flower is an artificial flower.

The court, in the *Marshall Field* case, *supra*, after discussing other holdings of this court and our appellate court in cases involving the construction and application of paragraph 1518 to imported merchandise, particularly the oft-cited case of *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62 (1920), T.D. 38336, at page 80, commented:

The *Cochran* case does not really lay down any "rule" or "test" different from the basic rule that common understanding of the meaning of the words controls. Though more verbose, an analysis of the quoted paragraph will show that when boiled down all the Court of Customs Appeals there said was that *a man-made article is an artificial flower if it looks enough like a flower (real or imaginary) to be regarded as an artificial flower "in common understanding."* And herein, we believe, resides the explanation of why the *Cochran* case can be and is repeatedly relied upon by both parties to a litigation; its supposed "rule" settles nothing because it begs the question. As we suggested above, the *Cochran* case leaves the decision as to any given article to be made by the court on the basis of the common meaning of the term artificial flowers, or fruits, or whatever may be involved, which is perhaps as it should be for it is not the business of this court to rewrite the tariff act but rather to apply it in specific situations. A close look at the *Cochran* case opinion will show that all the court was doing was to say whether or not the straw objects before it were or were not artificial fruits, leaves, flowers and stems, though admittedly they looked like no real plant to the extent of deceiving anyone into thinking they were real. The court decided the issues, as it has in every other case we have reviewed, *on the basis of its own judgment* as to whether the merchandise before it was or was not *in common understanding* an artificial fruit, leaf or flower. Thus, on a case by case basis, the court construes and sets the limits of the statutory language by a process of inclusion and exclusion. It is by this process that we determine "common meaning," which it is our province to do and as to which we are bound by no evidence. * * *

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

The tariff laws are drafted in the language of commerce which is presumptively that in common use and no testimony as to common meaning is required to make out a case because such testimony, if offered, is merely advisory to the court. *Hummel Chemical Co.* v. *United States, supra.* We have before us samples of the merchandise which, in a case of this character, are most potent witnesses, *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 C.C.P.A. (Customs) 26, C.A.D. 120.

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of

three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor. [Italics quoted.]

In the case of *Coro, Inc.* v. *United States*, 39 C.C.P.A. (Customs) 154, C.A.D. 478, the articles involved were used for costume jewelry designed to be attached to dresses, coats, and hats of women as ornaments. They were described as composed of metal and glass, consisting of three layers of metal in trefoil form superimposed one on another in successively smaller diameters, the trefoil portions being black in color with a bright silverlike edging. In the center of the outer face of the brooch, there was a short metal post on which was mounted a piece of glass having facets like those of a round cut diamond. Our appellate court, in the *Coro* case, *supra*, observed that the portion of the brooch apart from the pin "may be said to be in the form of a conventional flower." It appeared, however, that there was nothing in the record to show that the flowerlike portion of the exhibit there under consideration was ever used by itself or for use in ornamenting wearing apparel. After quoting the so-called rule of interpretation, as given in the *Cochran* case, *supra*, as to what constitutes "artificial and ornamental fruits, grains, leaves, flowers, and stems," the court, in the *Coro* case, *supra*, page 157, stated:

In our opinion, even though it may be said that the involved articles are conventionally flowerlike, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

We are in accord with the holding in the *Morimura* case, *supra*, namely, that it is the *per se* nature of the article which controls its classification as to whether or not it is an artificial flower and not the use to which it is put. In the case at bar, we are of opinion that the involved article, in the common understanding, appears to be just what it is intended to represent, namely, an article of wrought iron wall decoration, using a branch and leaf motif. Accordingly, the *per se* nature of the article here involved is that of a work of wrought iron. As was stated in the *Marshall Field* case, *supra*: "We believe that the common understanding of the term 'artificial fruit' does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color." The article here involved is

similar in nature to that under consideration in the *Marshall Field* case, *supra*, and, in our opinion, the same reasoning there applied is equally pertinent in the case at bar.

Likewise, consonant with the holding in the *Coro* case, *supra*, the involved articles are, in our opinion, "neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted."

On the basis of the record here presented and the applicable law, we are of opinion and hold that the involved iron wall ornaments are properly dutiable under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 20 per centum ad valorem, as articles or wares not specially provided for, wholly or in chief value of iron, as claimed. The protest is sustained. Judgment will issue accordingly.