(C.D. 2555)

ALPINE IMPORTERS OF CALIF. *v.* UNITED STATES

United States Customs Court, First Division

(Decided July 12, 1965)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*James F. O'Hara* and *Charles P. Deem*, trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

WILSON, Judge: In this action, the plaintiff contests the classification of certain imported merchandise under paragraph 1518(a) of the Tariff Act of 1930, as modified by the Japanese Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, at the rate of 35 per centum ad valorem as artificial flowers, grasses, leaves, or stems, composed of materials other than yarns, threads, filaments, tinsel wire, lame, etc. It is contended that the merchandise is properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as articles or wares not specially provided for, whether partly or wholly manufactured, composed wholly or in chief value of iron, steel, copper, brass, etc., and not plated with platinum, gold, or silver, or colored with gold lacquer, and that duty should be assessed at 19 per centum ad valorem. It was stipulated between the parties that the importations are in chief value of iron or steel and are not plated with platinum, gold, or silver, and are not plated or colored with gold lacquer.

The evidence in the case, all introduced by the plaintiff, consists of two exhibits and the oral testimony of Albert Gronich.

Plaintiff's exhibit 1 consists of a small representative sample of an item similar in appearance to a bamboo shoot but which has the color of antique gold. Plaintiff's exhibit 2 is a pictorial representation of a "Seven-lite hydrangea sconce in metal" which has gold leaf and antique white flowers. In the back of the sconce, are certain holes through which electric wires may be drawn for the purpose of placing lights behind the metal flowers. It was stated by Mr. Gronich that the items represented by plaintiff's exhibit 1 also come in green and silver colors but never in multicolors; that plaintiff's exhibit 2 is imported in two colors, one an all gold and the other an antique white, but that such items are never imported in multicolors.

Mr. Gronich, who was identified as the manager of Alpine Importers of Calif., the plaintiff herein, testified that his company was in

the business of importing iron and alabaster items; that he had been with the firm from its inception 7 years before the date of the trial; that he had served as manager of the company and that, in such capacity, he managed the warehouse and the store, and also directed the buying and selling of the company's products. The witness indicated full familiarity with the imported merchandise and its uses. On this point, the witness testified as follows:

Q. Have you had an opportunity to become familiar with the uses made by the ultimate purchaser of Exhibits 1 and 2?—A. Yes, I have.

Q. And how have you had that opportunity? Have you seen them in use?— A. Yes. They're a wall décor.

Q. And how are they used?—A. They're put up against the wall to accentuate color, to give color to the room, or the rugs, or the drapes.

Q. Would you say they are hung——A. They are flat against the wall.

\*  \*  \*  \*  \*  \*  \*

Q. Have you ever seen Exhibit 1 or 2 holding candles, or being electrified for lights, after importation?—A. Yes. Not the shoots. They can not be electrified.

Q. You're speaking of Exhibit 1?—A. Exhibit 1—0-41—they can not be electrified.

Q. How about Exhibit 2?—A. It can be.

\*  \*  \*  \*  \*  \*  \*

Q. Have you ever seen natural flowers used in the same manner as Exhibits 1 and 2, being hung on the wall?—A. No.

Q. Have you ever seen natural flowers being electrified as a torch on a wall?—A. No, I haven't. [R. 7–8.]

Under cross-examination, Mr. Gronich admitted that plaintiff's exhibit 2 looks like a hydrangea. Referring to plaintiff's exhibit 1, the witness stated that the exhibit was similar in appearance to a bamboo shoot. The witness further testified that he had seen items such as plaintiff's exhibit 1 used for decorative purposes, i.e., for wall décors. He further stated that while he had seen flowers used for decorative purposes, he had never seen them used flat against the wall as the imported items are used; that flowers when used are put in pots or other things (R. 8–9). On re-direct examination, the witness testified that he had never seen the stems and leaves from a hydrangea in gold or white colors or of all one color, and had never seen bamboo shoots taken from nature of the color of plaintiff's exhibit 1; that the natural bamboo shoot is of a light beige color (R. 10).

The issue for determination in this case is clearly drawn: Were the imported items properly classified under paragraph 1518(a) as artificial flowers, etc., or are they more properly dutiable under the provisions of paragraph 397?

The competing paragraphs of the tariff act read as follows:

Paragraph 1518(a) of the Tariff Act of 1930, as modified by the protocol of terms of accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877:

Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof:

\* \* \* \* \* \* \*

Composed wholly or in chief value of other materials (except feathers) and not specially provided for_____ 35% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \*

Other, composed wholly or in chief value
of iron, steel, brass, bronze, zinc,
or aluminum (except \* \* \* )_____19% ad val.

There has been extensive litigation under the paragraphs involved in this case. Numerous decisions of both the United States Customs Court and the Court of Customs and Patent Appeals have construed these paragraphs of the tariff act. However, in the case of *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676, decided January 22, 1958, our appellate court reviewed all the leading cases on the question decided prior to that date, and the *Marshall Field* case still stands as the latest expression of the appellate court upon the subject.

In the *Marshall Field* case, *supra*, the merchandise under consideration was invoiced in one protest as "Iron Works, Metal fruits w/ leaves" and was classified as "artificial fruits," and, in another protest, as "Iron pictures of 4 season flowers rusty finish with dull black wooden frame" and classified as "artificial flowers," under paragraph 1518. In further describing the involved merchandise in the *Marshall Field* case, *supra*, the court, pages 73–74, stated:

A sample of the merchandise invoiced as "Iron Works, Metal fruits w/leaves" is in evidence (bearing a "Made in Italy" tag) and consists of a three-dimensional, realistic representation of a stem about 6 inches long to which are affixed four short branches, three of which have representations of leaves on them about 3 inches long, and the fourth has an object about 8 inches in circumference attached thereto which looks to us like a small pomegranate with a segment of outer skin removed, exposing the inner cells. The color of the whole is that of slightly rusty iron.

Though there appears to have been no article available which corresponded to "Iron pictures of 4 season flowers," an illustrative sample of such merchandise is before us (tagged "Made in Japan") which is alleged to be of the same type as the imported articles except that the sample has a round stamped metal frame about a foot in diameter and the imported wares had oblong wooden frames. The framed representation consists of simulated flower stems of roughened wire from which run a number of branches bearing nine leaves and two flowers somewhat like large daisies, the ends of the petals being more or less curled inwardly. The leaves and flowers are formed from light gauge sheet metal and this sample is painted black, though the invoice calls for "rusty finish."

After reviewing numerous cases previously decided by the appellate court involving the proper classification of various imported items under the competing paragraphs now involved, and after referring specifically to the case of *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, T.D. 38336, the court, in the *Marshall Field* case, page 80, said:

The *Cochran* case does not really lay down any "rule" or "test" different from the basic rule that common understanding of the meaning of the words controls. Though more verbose, an analysis of the quoted paragraph will show that when boiled down all the Court of Customs Appeals there said was that *a man-made article is an artificial flower if it looks enough like a flower (real or imaginary) to be regarded as an artificial flower "in common understanding."* And herein, we believe, resides the explanation of why the *Cochran* case can be and is repeatedly relied upon by both parties to a litigation; its supposed "rule" settles nothing because it begs the question. As we suggested above, the *Cochran* case leaves the decision as to any given article to be made by the court on the basis of the common meaning of the term artificial flowers, or fruits, or whatever may be involved, which is perhaps as it should be for it is not the business of this court to rewrite the tariff act but rather to apply it in specific situations. A close look at the *Cochran* case opinion will show that all the court was doing was to say whether or not the straw objects before it were or were not artificial fruits, leaves, flowers and stems, though admittedly they looked like no real plant to the extent of deceiving anyone into thinking they were real. The court decided the issues, as it has in every other case we have reviewed, *on the basis of its own judgment* as to whether the merchandise before it was or was not *in common understanding* an artificial fruit, leaf or flower. Thus, on a case by case basis, the court construes and sets the limits of the statutory language by a process of inclusion and exclusion. It is by this process that we determine "common meaning," which it is our province to do and as to which we are bound by no evidence. * * * [Italics quoted.]

In support of this position, the court, in the *Marshall Field* case, *supra*, cited numerous decisions. The court further stated as its conclusion from a review of the previous decisions, page 81:

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included other such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

In the case of *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, 47 Cust. Ct. 112, C.D. 2289, the United States Customs Court followed the *Marshall Field* decision, *supra*, and held that "Certain iron wall ornaments, using a branch and leaf motif, the overall color and appearance of which is that of wrought iron, and used to add a touch of wrought iron to the décor" were properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified, rather than under paragraph 1518 of the act.

In our opinion, the imported merchandise does not meet the test of being commonly understood to be artificial fruits, flowers, stems, etc., as provided for in paragraph 1518(a) of the tariff act, but are more properly classifiable under paragraph 397 of the act. Although the iron representations of flowers appear to look like hydrangeas, they are not used as natural flowers when placed flat against the wall. In viewing the iron items as used, no one would be led to think of them as artificial flowers. They merely serve as a wall décor fastened flat against the wall. They do not have the color of the natural flowers which they simulate and, furthermore, natural flowers would not be electrified or made ready for electrification as is the case with plaintiff's exhibit 2. One cannot think of a bamboo shoot the size of plaintiff's exhibit 1 as being an artificial bamboo shoot in the sense intended under the provisions of paragraph 1518 of the tariff act. Objects of colored iron fastened on a wall would not lead anyone to think of items such as plaintiff's exhibit 1 as being an artificial stem or shoot.

On the evidence before us, we hold that the merchandise is properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as articles or wares, not specially provided for, wholly or in chief value of iron or steel, as claimed.

The protest is sustained. Judgment will be entered accordingly.