(C.D. 2590)

J. GERBER & Co., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 29, 1965)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Richard J. Kaplan* and *Harvey A. Isaacs,* trial attorneys), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges; NICHOLS, J., concurring

WILSON, Judge: The merchandise in the case at bar, described on the invoice as "Christmas Tree Sets," was classified by the collector under paragraph 1518(a) of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877, at the rate of 35 per centum ad valorem as articles, not specially provided for, in chief value of artificial flowers, composed of "other" materials.

Plaintiff claims that the imported merchandise (plaintiff's brief, page 1)—

* * * is not an article in chief value of artificial flowers; that it is dutiable by similitude under Paragraph 1559, Tariff Act of 1930, as amended, either by similitude to articles in chief value of metal having as an essential feature an electrical element or device as provided for in Paragraph 353, Tariff Act of 1930 as modified or by similitude to articles in chief value of glass provided for in Paragraph 218(f), Tariff Act of 1930 as modified; that if it is not dutiable by similitude then the merchandise is non-enumerated and dutiable under Paragraph 1558, Tariff Act of 1930 as modified.

The pertinent provisions of the statutes herein involved are as follows:

Paragraph 1518(a), Tariff Act of 1930, as modified, *supra:*

Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof:

     *       *       *       *       *       *       *

Boas, boutonnieres, wreaths and all articles not specially provided for, composed wholly or in chief value of any of the fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts provided for in the preceding item 1518(a) which components are wholly or in chief value of—

\* \* \* \* \* \* \*

    Other materials (not including feathers) _____ 35% ad val.

Paragraph 1559(a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of September 1, 1954, 68 Stat. 1137:

(a) Each and every imported article, not enumerated in this Act which is similar in the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty as the enumerated article which it most resembles in the particular before mentioned; and if any nonenumerated article equally resembles in that particular two or more enumerated articles on which different rates of duty are chargeable, it shall be subject to the rate of duty applicable to that one of such two or more articles which it most resembles in respect of the materials of which it is composed.

Paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739:

Articles having as an essential feature an electrical element or device, \* \* \* wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

    Other (\* \* \*) _____ 13¾% ad val.

Paragraph 218(f), Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, supplemented by T.D. 53877:

All articles \* \* \* of every description not specially provided for, composed wholly or in chief value of glass \* \* \*:

\* \* \* \* \* \* \*

    Other, valued not over $1.66⅔ each (\* \* \*) _____ 30% ad val.

Paragraph 1558, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, supplemented by T.D. 52827:

Articles manufactured in whole or in part, not specially provided for (\* \* \*) _____ 10% ad val.

It was stipulated between counsel that the merchandise in question is in chief value of plastic and that if it is not dutiable under paragraph 1518, as assessed, then it is not such an article which is directly enumerated under any of the provisions of the tariff act (R. 4–5).

The record, in this case, consists of the testimony of one witness called on behalf of the plaintiff, and, in addition there was introduced in evidence a sample of the involved item (plaintiff's exhibit 1, R. 19). The article in question is described on the invoice as "20 light vinyl rose set, all non-screw base." Each set consists of a very small bulb of red color, enclosed by five plastic red-simulated petals and five

green plastic leaves, the sets being connected together by a plastic wire.

Mr. Simon Taylor, assistant department manager for the firm of J. Gerber & Co., plaintiff herein, testified essentially as follows: That his company deals in Christmas decorations, small piece goods, notions, novelties, and electric-light bulbs; that his company sells these light sets, known as miniature light sets, to "the American set manufacturers, who use it to complement the line of domestic light sets" (R. 10); that he had seen the imported light sets sold in department stores, hardware, automotive, and catalog stores. Mr. Taylor further testified that he had seen merchandise such as plaintiff's exhibit 1 used indoors, in windows, displays of small stores, indoors on a tree in homes, both on the east and west coast of the United States, and in Chicago and Alaska; that, when used in homes, the light sets are placed around the tree and people light the sets for the holiday period and use them around the tree or put them in the window (R. 20–21); that, when in use, the light appears to be inside the flower, but that the lighting is not sufficiently strong for the purpose of illumination (R. 22). The witness stated that the petals of the set are not removable (R. 26).

Mr. Taylor further testified that he had never seen natural flowers used in the same way as these lighting sets (R. 26–27). Describing the manufacture of such lighting sets, plaintiff's witness stated:

A.  First, they get these rings, and then they twist——
JUDGE WILSON:  Rings of what?
THE WITNESS:  Wire.
JUDGE WILSON:  What material?
THE WITNESS:  This is plain wire, which comes on a big wheel. Then they twist the string, and twist the strings at a predetermined length, and then they get some lamps, or make the lamps and attach them at these predetermined lengths, and they also put a plug at the end, and then they put some decorations on, which decorations they put on either before they insert the lamp or after. That is the basic operation. [R. 27.]

As indicated by the witness, the materials of which the lighting set is composed are plastic, glass, and metal (R. 29). He further testified that Christmas tree lighting sets and these sets are used in the same way for decorative purposes in the house (R. 30).

It was stipulated between counsel for the respective parties that if the merchandise is dutiable by similitude, it is dutiable under paragraph 218(f) of the Tariff Act of 1930, as modified, *supra*, by virtue of paragraph 1559(a) of the Tariff Act of 1930, as amended, at 30 per centum ad valorem as articles, not specially provided for, composed wholly or in chief value of glass (R. 31–32).

The issue in this case has been narrowed to the question as to whether or not the articles under protest are properly dutiable under paragraph 1518(a) of the Tariff Act of 1930, as modified, *supra*, as articles in chief value of artificial flowers of "other" materials. If

they are not, then, under the stipulations entered into between counsel for the respective parties, heretofore referred to, said articles are properly classifiable under paragraph 218(f) of the Tariff Act of 1930, as modified, *supra*, by similitude to articles composed wholly or in chief value of glass at the rate of 30 per centum ad valorem, as claimed.

Recent decisions of our appellate court have involved the question of what constitutes artificial flowers as provided for in paragraph 1518(a) of the tariff act, *supra*. In *Coro, Inc.* v. *United States*, 39 CCPA 154, C.A.D. 478, the involved merchandise consisted of a pin or brooch of metal and glass representing a conventional flower and having a pin on the back. It was assessed as jewelry in chief value of artificial flowers and claimed not to be an article in chief value of artificial flowers, but properly dutiable under paragraph 1527(a) of the tariff act, as modified, as jewelry.

The court, in the *Coro* case, *supra*, quoted in its opinion from the case of *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, T.D. 38336, which latter case involved certain articles made of various materials which the collector classified under paragraph 347 of the Tariff Act of 1913 as artificial flowers and leaves used as millinery ornaments. The exhibits in evidence in the *Cochran* case consisted of "a spray of leaves upon which is set one brown and three blue oblate spheriods of different sizes and composed of straw"; "a cluster made of black straw wound into the form of berries or grapes and set on a black-straw leaf attached to a stem made of black straw and metal"; and "a spray of black leaves bearing a black rose," the spray and rose being composed of black straw. The court, in the *Coro* case, supra, quoted the following from the opinion in the *Cochran* case, *supra*:

It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem. Nevertheless, both come within the tariff designation of "artificial and ornamental fruits, grains, leaves, flowers, and stems," inasmuch as *they are articles which simulate the natural fruit, flower, leaf, or stem in its physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits produced not by nature, but by the hand of man, and which at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.* [Emphasis quoted.]

Thereupon, the court, in the *Coro* case, *supra*, at pages 157–158, stated:

It may be noted by a reading of the quotation hereinbefore set out from the *Cochran Co. et al.* case, *supra*, that under the succinct wording thereof, even though the imported articles need not directly represent any natural flower, fruit, leaf, or stem, if those things are simulated in their physical characteristics and appearances so as to be regarded as such in common understanding as being made by man instead of being produced by nature, that they come within the scope of the Tariff Act providing for artificial plant life.

We desire to draw particular attention to the latter portion of that quotation which determined that, even though the artificial articles possess the attributes and qualities set forth in the previous portion of the quotation, those articles must be such that they "* * * at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted."

In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

In *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676, a sample of the merchandise invoiced as "Iron Works, Metal fruits w/leaves" consisted of a "three-dimensional, realistic representation of a stem about 6 inches long to which are affixed four short branches, three of which have representations of leaves on them about 3 inches long, and the fourth has an object about 8 inches in circumference attached thereto which looks to us like a small pomegranate with a segment of outer skin removed; exposing the inner cells. The color of the whole is that of slightly rusty iron." The other article involved in the *Marshall Field* case described as "Iron pictures of 4 season flowers" was a framed representation which—

* * * consists of simulated flower stems of roughened wire from which run a number of branches bearing nine leaves and two flowers somewhat like large daises, the ends of the petals being more or less curled inwardly. The leaves and flowers are formed from light gauge sheet metal and this sample is painted black * * *.

The court, in the *Marshall Field* case, *supra*, after reviewing a number of cases involving the question here under consideration, at page 79, stated:

* * * an *artificial* flower, by definition, is one which is suited to the uses to which natural flowers may be put, and the chief use of real flowers is to ornament. * * *

\*          \*          \*          \*          \*          \*          \*

Thus an artificial flower can of course be used to ornament but it does not follow, in logic, that because a thing can be used to ornament it is necessarily an artificial flower, even though it has some other flower-like characteristics. [Italics quoted.]

The court, in the *Marshall Field* case, *supra*, then continued, page 81:

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size,

primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

The tariff laws are drafted in the language of commerce which is presumptively that in common use and no testimony as to common meaning is required to make out a case because such testimony, if offered, is merely advisory to the court. *Hummel Chemical Co.* v. *United States, supra.* We have before us samples of the merchandise which, in a case of this character, are most potent witnesses, *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 C.C.P.A. (Customs) 26, C.A.D. 120.

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

In the case at bar, the record, as heretofore indicated, shows that the so-called flowers are permanently attached to strings of lights and that such strings are used in the same manner and for the same purpose as are the well-known Christmas lighting sets for decoration on Christmas trees and in other areas in the home, or in store window displays during the Christmas season. In our opinion, the involved lighting sets are not properly classifiable as articles in chief value of artificial flowers. They are something more than artificial flowers. The particular item has wiring, socket bases, and wiring attachments devoted solely to the purpose of a complete lighting set. While the plastic roses attached to these lighting sets may be somewhat employed for decorative purposes (R. 30), that factor alone does not make the lighting set an article in chief value of artificial flowers. The involved items are not "dedicated to the same uses to which articles containing natural flowers, leaves, stems, etc., might be employed, for decorative or ornamental purposes." See *Mottahedeh Creations, Ltd., et al.* v. *United States,* 43 Cust. Ct. 9, C.D. 2095. As a practical matter, natural flowers or petals or leaves could not be used in the manner in which the plastic petals and leaves are used in the involved lighting sets, even temporarily. In our opinion, the reasoning applied by the court in the *Coro, Inc.,* and *Marshall Field & Co.* cases, *supra,* apply with equal force in the case at bar. The involved articles "are neither

appropriate nor suitable for the well-known purposes of ornamentation to which artificial flowers may be temporarily devoted."

For the reasons heretofore advanced, we hold the involved lighting sets dutiable by similitude under the provisions of paragraph 1559(a) of the Tariff Act of 1930, as amended, *supra*, and paragraph 218(f) of said act, as modified, *supra*, at the rate of 30 per centum ad valorem as articles, not specially provided for, composed wholly or in chief value of glass, as claimed.

The protest in this case is sustained. Judgment will issue accordingly.

### CONCURRING OPINION

NICHOLS, Judge: Judge Wilson's opinion is correct on the facts and law, decides the issues briefed by the parties, and disposes of the case. Those grounds are sufficient for me to sign the judgment order, as I do. However, I am concerned about the stipulations and hope counsel will not regard one of those entered into herein as an approved form for future cases. That is the one at page 31 of the record where counsel state that if the merchandise is dutiable by similitude, it is dutiable under the provisions of paragraph 218(f), by virtue of paragraph 1559. This is the only evidence we have that the merchandise resembles in use articles, not specially provided for, composed wholly or in chief value of glass. No doubt the able and responsible attorneys who tried the case would not have so stipulated unless they were aware that such articles existed, a matter of which I have no judicial knowledge. No doubt our faith in them justifies our holding as we do, in substance, that the fact is established. However, not only is the stipulation formally defective as attempting to stipulate the law (*Julius Forstmann & Co.* v. *United States*, 26 CCPA 336, C.A.D. 37), but it is equivocal. If there were no glass article the import resembled as to use, it would only be false in case there should be an article of some other material the import so resembled. If counsel engage in such weasel-worded stipulations instead of forthright statements of the essential facts, they will have only themselves to blame if suspicion arises that more is going on than meets the eye. Of course, the known high character of the counsel precludes suspicion here. And I suppose I am *particeps criminis*, having sat mute when the stipulation was entered into.