(C.D. 3064)

Moore International, Inc.
American Customs Brokg. Co., Inc., et al. } *v.* United States

United States Customs Court, First Division

(Decided July 24, 1967)

*Glad & Tuttle* (*Edward N. Glad* and *Robert Glenn White* of counsel) for the plaintiffs.
*Carl Eardley,* Acting Assistant Attorney General (*Samuel D. Spector* and *Arthur E. Schwimmer,* trial attorneys), for the defendant.

Before Watson and Beckworth, Judges, and Oliver, Senior Judge

Watson, Judge: The merchandise the subject of these protests, consolidated for trial, consists of various fruits and nuts carved from wood. It was classified under item 748.21, Tariff Schedules of the United States, at the rate of 42.5 per centum ad valorem as artificial fruits of "other" material.

Plaintiffs claim the merchandise to be properly classifiable under item 207.00 of the Tariff Schedules of the United States at the rate of 16⅔ per centum ad valorem as "articles not specially provided for, of wood." It was stipulated that the articles in question are in chief value of wood (R. 3).

The pertinent statutes here involved are as follows:

Part 7, schedule 7, Tariff Schedules of the United States:

Artificial flowers, trees, foliage, fruits, * * *, parts of the foregoing, and articles made of the foregoing (except * * *) :
    Wholly or almost wholly of plastics
        [Item 748.21] Other_____42.5% ad val.

Part 1, schedule 2, Tariff Schedules of the United States:

Subpart F. * * *

   *      *      *      *      *      *      *

[Item 207.00] Articles not specially provided for, of wood_____16⅔% ad val.

The issue in the case at bar is whether the involved articles are within the common understanding of the term "artificial fruits."

Two witnesses testified at the trial, one called by the plaintiffs and one by the defendant. There were also received in evidence 17 exhibits as follows:

Plaintiffs' exhibit 1—a sample of item H-400, referred to on the invoice as an apple (R. 7, 9).

Plaintiffs' exhibit 2—a sample of item H-401, referred to on the invoice as a pear (R. 9).

Plaintiffs' exhibit 3—a sample of item H-402, referred to on the invoice as a lemon (R. 9).

Plaintiffs' exhibit 4—a sample of item H-403, referred to on the invoice as a mango (R. 10).

Plaintiffs' exhibit 5—a sample of item H-404, referred to on the invoice as a papaya (R. 10).

Plaintiffs' exhibit 6—a sample of item H-405, referred to on the invoice as an atis, a popular Philippine fruit called a hand grenade in this country (R. 11).

Plaintiffs' exhibit 7—a sample of item H-406, referred to on the invoice as a balimbing, named a star fruit in Hawaii (R. 11).

Plaintiffs' exhibit 8—a sample of item H-407, referred to on the invoice as a banana (R. 12).

Plaintiffs' exhibit 9—a sample of item H-408, referred to on the invoice as "Black Calamassi," an unknown article (R. 12–13).

Plaintiffs' exhibit 10—a sample of item H-409, referred to on the invoice as grapes (R.13).

Plaintiffs' exhibit 11—a sample of item H-411, referred to on the invoice as black grapes (R. 14).

Plaintiffs' exhibit 12—a sample of item H-412, referred to on the invoice as sinkamas, called "a garlic" in this country (R. 14–15).

Plaintiffs' exhibit 13—a sample of item H-413, referred to on the invoice as tamarind, called a bean in this country (R. 15).

Plaintiffs' exhibit 14—a sample of item H-414, referred to on the invoice as santol, something like a lemon (R. 15–16.)

Plaintiffs' exhibit 15—a sample of item H-415, referred to on the invoice as a cashew nut (R. 16–17).

Plaintiffs' exhibit 16—a sample of item H-416, referred to on the invoice as makupa, an unknown article (R. 17).

Plaintiffs' exhibit 17—a sample of item H-417, referred to on the invoice as a strawberry (R. 17–18).

Mr. John G. Moore, called by the plaintiffs, testified that he is president of Moore International, Inc., importer of general merchandise. The firm imports from 15 or 20 countries, principally from Japan and the Philippine Islands (R. 4). Mr. Moore stated that he does all of the buying and some of the selling for his concern; that he researches the market to determine how much, when and what to buy; and that generally he keeps abreast of the market to meet the buyer's needs, checking buying and selling markets and trends in the trade. His travels in this connection are mainly in the Far East (R. 5).

Plaintiffs' witness testified that he has been familiar with the merchandise at bar for 4 years or more, having first become familiar with this line of merchandise when his firm was surveying the market of monkeypod wood in the Philippines—"fruit carvings"—and that he decided that his company should have something to supplement its monkeypod wood line, something that would "effect an entirely wood motif" (R. 6–7). Mr. Moore stated that he had become familiar with the uses his customers make of the various articles in question by visiting retail shops and seeing how they are displayed, and also by seeing them displayed in homes. He then testified that, in almost all cases, they are used on monkeypod wood trays or other types of wood trays (R. 18). The witness stated that he had never seen them displayed in china or porcelain bowls and, further, that he has never seen real fruit displayed in monkeypod bowls (R. 19). Plaintiffs' witness further stated that the color of the various articles is not that of the natural fruit of which they are carved to resemble (R. 19).

On cross-examination, Mr. Moore agreed that the exhibits in question represent the natural fruit in shape or form and stated that, other than the fact that they are of wood and of wood color and texture, the items in question resemble the original fruit (R. 19–20). He then stated

that in the stores where he had seen these items displayed and sold, the storekeeper in almost all cases described the merchandise as "wood carvings" and that he had never heard the items described as artificial fruits ( R. 20).

The defendant called as its witness, Mr. Lloyd Elmore Short, who does a general importing business and operates the Bamboo Window, a shopping center in Honolulu, Hawaii. He stated that he was not familiar with the articles represented by plaintiffs' exhibits 3, 9, 11, 13, 16, and 17 but that he was familiar with and sells the items represented by plaintiffs' exhibits 1, 2, 4, 5, 6, 7, 8, 10, 12, 14, and 15 and that he describes such items to his customers as "artificial fruits" and classifies them as such (R. 21–23). Plaintiffs' witness testified that all of the items that he sells are in the natural wood coloring. He was not sure whether plaintiffs' exhibit 11 ("Black Grapes") was all natural wood or stained but stated, however, that the wood grain could be seen on it. Mr. Short further testified that, in selling such items in his store, they are normally kept with the wood items on display there, so usually but "not necessarily" they would be on a wood tray, but in any case a "wood motif" (R. 24).

The question as to whether an article is or is not properly classifiable as an artificial flower, fruit, stem, leaf, etc., has been passed upon by this and our appellate court many times. In *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62, T.D. 38336, exhibit 2 consisted of a cluster of black straw wound into the form of berries or grapes and set on a black straw leaf attached to a stem of black straw and metal. Exhibit 3 consisted of a spray of black leaves bearing a black rose, both spray and rose being composed of black straw. The court held the goods represented by both exhibits to have been properly classified under the provision for artificial and ornamental fruits and flowers in the Tariff Act of 1913, and stated (at page 64) :

It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem. Nevertheless, both come within the tariff designation of "artificial and ornamental fruits, grains, leaves, flowers, and stems," inasmuch as they are articles which simulate the natural fruit, flower, leaf, or stem in its physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits produced not by nature, but by the hand of man, and which at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.

In *Marshall Field & Co.* v. *United States*, 45 CCPA 72, C.A.D. 676, the court reviewed its previous decisions and stated (at pages 80–81) :

The *Cochran* case does not really lay down any "rule" or "test" different from the basic rule that common understanding of the meaning of the words controls. Though more verbose, an analysis of the quoted

paragraph will show that when boiled down all the Court of Customs Appeals there said was that *a man-made article is an artificial flower if it looks enough like a flower (real or imaginary) to be regarded as an artificial flower "in common understanding"*. And herein, we believe, resides the explanation of why the *Cochran* case can be and is repeatedly relied upon by both parties to a litigation; its supposed "rule" settles nothing because it begs the question. As we suggested above, the *Cochran* case leaves the decision as to any given article to be made by the court on the basis of the common meaning of the term artificial flowers, or fruits, or whatever may be involved, which is perhaps as it should be for it is not the business of this court to rewrite the tariff act but rather to apply it in specific situations. A close look at the *Cochran* case opinion will show that all the court was doing was to say whether or not the straw objects before it were or were not artificial fruits, leaves, flowers and stems, though admittedly they looked like no real plant to the extent of deceiving anyone into thinking they were real. The court decided the issues, as it has in every other case we have reviewed, *on the basis of its own judgment* as to whether the merchandise before it was or was not *in common understanding* an artificial fruit, leaf or flower. Thus, on a case by case basis, the court construes and sets the limits of the statutory language by a process of inclusion and exclusion. It is by this process that we determine "common meaning," which it is our province to do and as to which we are bound by no evidence. * * * [Citations omitted.] [Emphasis quoted.]

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

In *Marshall Field & Co.* v. *United States, supra,* the court reviewed many cases involving the issue with which we are here concerned. There the subject merchandise was described by the court, pages 73–74, to be:

* * * a three-dimensional, realistic representation of a stem about 6 inches long to which are affixed four short branches, three of which have representations of leaves on them about 3 inches long, and the fourth has an object about 8 inches in circumference attached thereto which looks to us like a small pomegranate with a segment of outer skin removed, exposing the inner cells. The color of the whole is that of slightly rusty iron.

Also there was a framed representation consisting of:

* * * simulated flower stems of roughened wire from which run a number of branches bearing nine leaves and two flowers somewhat like large daisies, the ends of the petals being more or less curled inwardly. The leaves and flowers are formed from light gauge sheet

metal and this sample is painted black, though the invoice calls for "rusty finish."

In holding the involved articles not properly classifiable under paragraph 1518 of the Tariff Act of 1930 as artificial flowers or fruits, the court in the *Marshall Field* case, *supra*, page 81, stated:

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior decor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

In the case of *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, 47 Cust. Ct. 112, C.D. 2289, this court followed the *Marshall Field* decision, *supra*, and held that certain iron wall ornaments, using a branch and leaf motif, the overall color and appearance being that of wrought iron, and used to add a touch of wrought iron to the decor, were properly classifiable under paragraph 397 of the Tariff Act of 1930, as modified, as articles or wares not specially provided for, composed wholly or in chief value of iron, as claimed, rather than under paragraph 1518 of the said act as articles in chief value of artificial leaves and stems, as classified. In so holding, the court in the *Hensel, Bruckmann* case, *supra*, after discussing a number of cases on the subject, at page 117, stated:

* * * In the case at bar, we are of opinion that the involved article, in the common understanding, appears to be just what it is intended to represent, namely, an article of wrought iron wall decoration, using a branch and leaf motif. Accordingly, the *per se* nature of the article here involved is that of a work of wrought iron. As was stated in the *Marshall Field* case, *supra:* "We believe that the common understanding of the term 'artificial fruit' does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired and to add a touch of wrought iron to the interior decor, not where one

would normally use real fruit or close imitations thereof in form and color." The article here involved is similar in nature to that under consideration in the *Marshall Field* case, *supra*, and, in our opinion, the same reasoning there applied is equally pertinent in the case at bar.

See also the holding of the court on somewhat similar lines in the cases of *Alpine Importers of Calif.* v. *United States*, 55 Cust. Ct. 81, C.D. 2555 (colored iron wall decorations some suitable for electrification), and *J. Gerber & Co., Inc.* v. *United States*, 55 Cust. Ct. 275, C.D. 2590, affirmed in *United States* v. *J. Gerber & Co., Inc.*, 54 CCPA 97, C.A.D. 916, decided May 11, 1967.

The parties to this controversy agree that, although the merchandise at bar was classified under the Tariff Schedules of the United States, judicial interpretations of predecessor provisions remain operative where not inconsistent. The court so interprets the application of the relevant provisions of the tariff act herein and our determination of the issue will be guided by this consideration.

In determining whether or not an article is an artificial flower or fruit, it is the *per se* nature of the article and not the use to which it is put which controls its classification. (*Morimura Bros.* v. *United States*, 8 Ct. Cust. Appls. 111, T.D. 37223, and *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States, supra*.) In this connection, we deem the testimony of the witness for the plaintiffs and that for the Government particularly relevant.

Plaintiffs' witness, Moore, who as heretofore indicated has become familiar with the uses his customers make of the merchandise at bar by visiting retail shops and homes and seeing how the items in question are displayed, testified that in almost all cases they are used on monkeypod or other types of wood trays (R. 18). His customers regarded and described the involved items as wood carvings and never as artificial fruits (R. 20). While defendant's witness who, as indicated by the record, was familiar with and sells most of the items in question, stated that he "classifies" them as artificial fruits (R. 23), he testified, on the other hand, that he keeps such articles with the wood items on display, normally on a wood tray, but in any event as a wood motif item (R. 23). The testimony to the above effect supports, in our opinion, the contention of the plaintiffs in this case that the wood articles here involved are of a *per se* character which give to the observer the "distinct and immediate impression" (*Marshall Field* case, *supra*) that they are works of natural textured wood rather than artificial flowers, fruits, or vegetables. We are of opinion that the involved items, in the common understanding, appear to be just what they are intended to represent, namely, articles of carved wood, using a flower

or fruit motif. The articles in question, for classification purposes, are governed by the same factors which were under consideration in the *Marshall Field* case, *supra*, and in our opinion, the same reasoning there applied is equally applicable in the case at bar.

Further, as stated by the court in the *Marshall Field* case, *supra*, page 81:

The tariff laws are drafted in the language of commerce which is presumptively that in common use and no testimony as to common meaning is required to make out a case because such testimony, if offered, is merely advisory to the court. *Hummel Chemical Co.* v. *United States, supra.* We have before us samples of merchandise which, in a case of this character, are most potent witnesses, *United States* v. *The Halle Bros. Co.*, 20 C.C.P.A. (Customs) 219, T.D. 45995; * * *.

In the case at bar, the samples are also potent witnesses. They lend support to our conclusion herein that the primary and dominant aspect of the articles herein involved is that of handsome carved articles of wood. As indicated by the holding of the court in the *Marshall Field* case, *supra*, predecessor paragraph 1518 of the Tariff Act of 1930 has been construed not to apply to articles which give the impression of fruit, flower, or vegetable only because of their shape. Neither "closeness of simulation" by shape nor the use to which an item is put is alone determinative of the classification of articles under paragraph 1518(a) of the tariff act. While the involved articles simulate to a degree the natural fruits in their contour or shape, we are of opinion that, as contended by the plaintiffs, their shape only serves "to accentuate the wood motif in which they are used," and not to give the impression of genuine natural "flowers, fruits or vegetables" so as to be considered "artificial" representations of the natural articles within the contemplation of paragraph 1518 of the tariff act.

For all of the reasons heretofore stated, we hold the involved merchandise properly classifiable under item 207.00 of the Tariff Schedules of the United States at the rate of 16⅔ per centum ad valorem as articles not specially provided for, of wood, as claimed. The protests are sustained.

Judgment will issue accordingly.